**WENTRONICS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

**No. 18189.**

United States Court of Appeals District of Columbia.

Argued March 5, 1964.

Decided March 26, 1964.

Mr. John Pope Cole, Jr., Washington, D. C., for appellant.

Mr. Joel H. Levy, Counsel, F. C. C., with whom Messrs. Max D. Paglin, Gen. Counsel, Daniel R. Ohlbaum, Associate Gen. Counsel, and Mrs. Ruth V. Reel, Counsel, F. C. C., were on the brief, for appellee.

Before WILBUR K. MILLER, DANAHER and McGOWAN, Circuit Judges.

PER CURIAM.

For some years the Federal Communications Commission has been concerned over the probability that community antenna television reception services,[1] commonly referred to in the industry as CATV, might have an adverse economic impact upon regular television stations in the communities served by them. The CATVs can relay to their subscribers, through microwave radio facilities, programs from distant television stations which duplicate the programs broadcast by local stations. While a CATV operation is not subject to the jurisdiction of the Commission, its use of microwave facilities must be licensed by it.

On December 14, 1962, the Federal Communications Commission gave notice of proposed making of rules to govern the grant of licenses for microwave radio stations serving CATV systems, and to permit authorizations in this service only (a) if the CATV system carries the signal of any existing or subsequently constructed local television station, and (b) if the CATV system does not duplicate any program carried by the local station, either simultaneously or 30 days before or after. It was announced that applications for such microwave authorizations

---

1. The Commission has described a community antenna as "a receiving antenna located on a high elevation so as to receive signals to best advantage, and wire lines whereby the signals received are transmitted to the receiving sets of the subscribers in the community, together with necessary amplifying equipment and sometimes equipment to 'convert' the signal from the channel on which it is received to another channel at which it appears on the subscriber's set." *CATV and TV Repeater Services*, 26 F.C.C. 403, 407 (1959).

would not be acted upon during the pendency of the rule making proceeding unless the applicants agreed to accept authorizations containing conditions (a) and (b) above described.

On January 22, 1963, Wentronics, the operator of a CATV system in Casper, Wyoming, filed with the Commission applications for modification of its three microwave radio authorizations to permit a second channel of service on which it proposed to carry the signals of a Denver television station. In an accompanying letter, Wentronics stated:

"* * * Wentronics, Inc., hereby gives notice in response to paragraph 7 of the Commission's 'Notice of Proposed Rule Making' in Docket No. 14895 that, in order to obtain a grant of these applications, it accepts the conditions described in paragraph 5 of that notice and that in operating this requested channel, when approved, such operation shall be pursuant to those conditions or with any other rules eventually adopted in this microwave service.

"The foregoing is without prejudice to Wentronic's [sic] rights to participate in the rulemaking procedure and to raise every legal objection to the adoption of the proposed rules."

On May 27, 1963, the Commission granted the applications subject to the following conditions:

"If the CATV system operates in an area within the predicted Grade A contour of any television broadcast station in operation, or which subsequently comes into operation, the CATV system must not duplicate simultaneously or 30 days [2] prior or subsequent thereto a program broadcast by such television broadcast station, provided the CATV operator has received at least 30 days advance notification from the broadcast station licensee of the date of such broadcast. Further, if requested by such television station, the CATV system must carry the signal of such station without any material degradation in quality."

Wentronics petitioned for reconsideration of its grants, saying it had not understood that the non-duplication condition would apply to all its operations as well as that covered by the applications for modification. It asked, however, for the complete elimination of the non-duplication condition. In denying this, the Commission said *inter alia:*

"* * * As we have stated, the circumstances are that the condition is an interim measure pending conclusion of the rule making proceeding, designed to accommodate those applicants who voluntarily accept them in order that they may obtain grants before the conclusion of the proceeding. Acceptance of the interim condition will not preclude or prejudice any changes which may flow from further action by the Commission in the rule making proceeding

"If you do not wish to retain the grants in question, as now conditioned, you may return them to the Commission for cancellation and your applications therefor will be returned to pending status."

This appeal is from the Commission's refusal to delete the above quoted condition from the authorizations.

■■ It should be noted that, as the proposed rules have not been adopted, their validity is not in issue here, and that the freeze pending rule making, which the Commission had the undoubted right to order,[3] is still in effect. In order to obtain exemption from the freeze order, Wentronics voluntarily agreed to the

2. This was later changed to 15 days.

3. Mesa Microwave, Inc. v. Federal Communications Comm., 105 U.S.App.D.C. 1, 262 F.2d 723 (1958); Harvey Radio Laboratories v. United States, 110 U.S. App.D.C. 81, 289 F.2d 458 (1961); Kessler v. Federal Communications Comm'n, 117 U.S.App.D.C. ——, 326 F.2d 673 (1963).

conditions imposed by the Commission. If it misunderstood those conditions, Wentronics may return the grants for cancellation and continue its CATV operations as before, free of the non-duplication condition; but it cannot retain the grants and be relieved of the conditions to which it agreed in order to obtain them.

Affirmed.