352 F.2d 729
 122 U.S.App.D.C. 253, 62 P.U.R.3d 302
 IDAHO MICROWAVE, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, The Klix
Corporation, Intervenor.
CABLE VIEW OF BURLEY, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, The Klix Corporation, Intervenor.
CABLE VIEW OF BURLEY, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, The Klix
Corporation, Intervenor.
 Nos. 19166, 19184, 19185.
 United States Court of Appeals District of Columbia Circuit.
 Argued Sept. 22, 1965.
Decided Oct. 18, 1965, Petitions for Rehearing En Banc and
Petitions for Rehearing before the Division Denied
Dec. 8, 1965.
 
 Mr. John P. Cole, Jr., Washington, D.C., for appellant in Nos. 19,166 and 19,185 and petitioner in No. 19,184.
 Mr. Robert D. Hadl, Counsel, Federal Communications Commission, with whom Sp. Asst. Atty. Gen. Lyle M. Turner, Messrs. Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, Federal Communications Commission, and Lionel Kestenbaum, Atty., Dept. of Justice, were on the brief, for appellee in Nos. 19,166 and 19,185 and respondents in No. 19,184.
 Mr. William J. Potts, Jr., with whom Mr. Andrew G. Haley, was on the brief, for intervenor.
 Before WILBUR K. MILLER, Senior Circuit Judge, and MCGOWAN and TAMM, Circuit Judges.
 WILBUR K. MILLER, Senior Circuit Judge:
 
 
 1
 Idaho Microwave, Inc., the owner and operator of a licensed common carrier microwave service, applied to the Federal Communications Commission for a construction permit to enable it to extend its service to Burley, Idaho, so that it could deliver signals from four Salt Lake City television stations to a community antenna system in Burley. On July 8, 1963, the Commission granted the application without hearing and issued a construction permit. But on August 14, 1963, The Klix Corporation, licensee of television station KMVT in Twin Falls, Idaho (which is about 35 air miles from Burley), filed a petition for reconsideration of the grant of the construction permit to Idaho Microwave. It alleged that the extension of the microwave facility to Burley and the consequent receipt there of the signals of the four Salt Lake City stations would have an adverse economic effect on KMVT, since Burley is within KMVT's Grade A contour, and would ultimately result in harm to the public interest. KMVT asked that the microwave service to Burley be authorized only on condition that the community antenna service (CATV) carry its signal and refrain from duplicating its programs. Alternatively, KMVT asked that the matter be designated for hearing.
 
 
 2
 While this petition for reconsideration was pending, Idaho Microwave completed construction of the new facilities, applied for a covering license under Section 319(c) of the Communication Act,[1] and began conducting service tests as permitted by a Commission rule.
 
 
 3
 On December 13, 1963, the Commission gave notice of Proposed Rule Making with respect to domestic point-to-point microwave radio service. The proposed rules provided that common carriers which furnish signals to CATV systems located within the Grade A contour of an existing television station could do so only on condition that the CATV carry the signals of such television station, and refrain from duplicating, for a period of 15 days before and after its showing, any program of the affected television station. The Commission determined that, during the pendency of the rule making, no new applications for common carrier microwave service would be granted unless the applicants voluntarily agreed to the conditions contained in the proposed rules.
 
 
 4
 By an opinion and order issued October 29, 1964, the Commission decided that, as Burley is within KMVT's Grade A contour and contains a significant portion of KMVT's audience, the pending license application should be granted only on condition that the CATV in Burley protect KMVT from program duplication, as provided in the proposed rules. The license, so conditioned, was issued.
 
 
 5
 Idaho Microwave and Cable View of Burley (the CATV at that place) petitioned for reconsideration. In addition, Idaho Microwave returned the conditioned grant, with a statement setting forth its reasons why the application should be granted as originally requested, as permitted by a Commission rule; whereupon, as provided in the rule, the Commission vacated its original action and, after reconsidering the application, found that the license application could not, in the public interest, be granted without the non-duplication condition. It also revoked Idaho Microwave's service test authority but, pursuant to its request, granted it authority to conduct service tests subject to the attached condition. The Commission noted that, if Idaho Microwave were unwilling to accept the conditioned license, its application for a covering license would revert to a pending status and it would be required to cease operating its Burley service.
 
 
 6
 On January 29, 1965, the Commission found that the public interest required the non-duplication condition, vacated the covering license theretofore granted to Idaho Microwave, and cancelled its service test authority. It granted, however, Idaho Microwave's request for service test authority subject to the non-duplication condition.
 
 
 7
 Idaho Microwave and Cable View appeal from the Commission's action just described, and Cable View also petitions for review of the same action. The three proceedings have been consolidated. For procedural reasons, Cable View's petition for review-- No. 19,184-- is dismissed, as we think identical relief is appropriately sought in Cable View's appeal in No. 19,185.
 
 
 8
 By stipulation of the parties, the questions presented by the appeals are whether the condition[2] attached by the Commission to Idaho Microwave's license (a) abridges the First Amendment rights of Idaho Microwave or Cable View; (b) or exceeds the Commission's jurisdiction as limited by Sections 2(b), 319(c) or 326 of the Communications Act;[3] or (c) violates Section 319(c) of the Communications Act or Section 9 of the Administrative Procedure Act.[4]
 
 
 9
 Wentronics, Inc. v. Federal Communications Comm., 118 U.S.App.D.C. 36, 331 F.2d 782 (1964), is relied on by the Commission as dispositive of these appeals. In that case, we held that an applicant for radio facilities who, in order to avoid a freeze already lawfully imposed by the Commission on such applications, accepts a construction permit subject to certain conditions, may not retain the grant and be relieved of the conditions to which it agreed in order to obtain it.
 
 
 10
 While the Wentronics case is persuasive, we think it is distinguishable. Here, the construction permit, later revoked, was granted to Idaho Microwave some four months before the freeze was ordered. Moreover, it had constructed the new facilities, applied for a covering license, and begun operations before the freeze was imposed. In these circumstances, we think it best to follow the Commission's example[5] and decide these cases on the merits.
 
 
 11
 Idaho Microwave insists that the condition imposed by the Commission on the use of its new Burley facility exceeds its authority as limited by Section 2(b) of the Act. It contends that, as a licensed common carrier providing service between points in Idaho only, it is specifically exempted from carrier regulation by the Commission by Section 2(b), which reads as follows:
 
 
 12
 '(b) Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier * * *.'
 
 
 13
 Idaho Microwave's contention necessarily interprets Section 2(b)(1) as though it read
 
 
 14
 (b) Subject to the provisions of Section 301 of this title, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations of any carrier having physical facilities in only one state.
 
 
 15
 This is vastly different from the actual wording of Section 2(b)(1), as we have seen. We think it clear that the condition attached to the license by the Commission is not a regulation of the practices, services or facilities of Idaho Microwave 'for or in connection with intrastate communication service.' The Burley facility is used as a link in the continuous transmission of television signals from Salt Lake City to Burley, Idaho; there is no interruption in the flow of the signals, as it is practically instantaneous. Thus, though Idaho Microwave's physical facilities are located within Idaho, it performs an interstate communication service when it takes part in the transmission of signals from Utah to Idaho. Ward v. Northern Ohio Telephone Co., 300 F.2d 816 (6th Cir), cert. denied 371 U.S. 820, 83 S.Ct. 37, 9 L.Ed.2d 61 (1962).
 
 
 16
 We next consider the question whether the Commission's action in attaching the non-duplication condition to Idaho Microwave's license violated Section 319(c) of the Act (47 U.S.C. 319(c)). That section is as follows:
 
 
 17
 '(a) Upon the completion of any station for the construction or continued construction of which a permit has been granted, and upon it being made to appear to the Commission that all the terms, conditions, and obligations set forth in the application and permit have been fully met, and that no cause or circumstance arising or first coming to the knowledge of the Commission since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest, the Commission shall issue a license to the lawful holder of said permit for the operation of said station. Said license shall conform generally to the terms of said permit. The provisions of section 309(a)-(g) of this title shall not apply with respect to any station license the issuance of which is provided for and governed by the provisions of this subsection.'
 
 
 18
 It is, perhaps, significant that appellants do not discuss this point in their brief, although it is not expressly abandoned. Suffice it to say that KMVT's petition for reconsideration of the grant of a construction permit to Idaho Microwave presented to the Commission causes and circumstances which had not arisen or come to the knowledge of the Commission before the granting of the permit and which would, in the judgment of the Commission, make the operation of the station against the public interest, unless the license were conditioned. Thus, there was no violation of Section 319(c) of the Act.
 
 
 19
 It is also contended by the appellants that the imposition of the non-duplication condition upon the license violated Section 326 of the Act[6] and the First Amendment to the Constitution.
 
 
 20
 Similar contentions were rejected by us in the Carter Mountain case.[7] There, the appellant relied on the First Amendment and on the prohibition against censorship contained in Section 326. We held the Commission had not violated either the constitutional or the statutory mandate and in the course of our opinion said, at page 98, 321 F.2d at page 364:
 
 
 21
 'It may be assumed that any denial of a license to transmit radio or television programs keeps off the air, and hence deprives the public of, the material which the applicant desires to communicate. But that does not mean that the Commission must grant every license which is requested. Nor does it mean that the whole statutory system of regulation is invalid. Quite the contrary is true: a denial of a station license, validly made because the standard of 'public interest, convenience, or necessity' has not been met, is not a denial of free speech. See National Broadcasting Co. v. United States, 319 U.S. 190, 226-227, 63 S.Ct. 997, 87 L.Ed. 1344 (1943).
 
 
 22
 'The Commission's offer to reconsider appellant's application if it shows that Western will not duplicate the local station's programs, and will make those programs available to Western's subscribers, appears to us to be a legitimate measure of protection for the local station and the public interest. The protection of the public interest does not amount to 'censorship' within the meaning of Section 326. See Bay State Beacon v. Federal Communications Commission, 84 U.S.App.D.C. 216, 171 F.2d 826 (1948). See also KFKB Broadcasting Ass'n v. Federal Radio Commission, 60 App.D.C. 79, 47 F.2d 670 (1931).'
 
 
 23
 Thus a basis for rejecting appellants' argument that the action of the Commission here abridges their rights under the First Amendment to the Constitution is the case of National Broadcasting Co. v. United States, 319 U.S. 190 (1943), where the Supreme Court said, at pages 226-227, 63 S.Ct. 997, at page 1014:
 
 
 24
 '* * * The question here is simply whether the Commission, by announcing that it will refuse licenses to persons who engage in specified network practices (a basis for choice which we hold is comprehended within the statutory criterion of 'public interest'), is thereby denying such persons the constitutional right of free speech. The right of free speech does not include, however, the right to use the facilities of radio without a license. The licensing system established by Congress in the Communications Act of 1934 was a proper exercise of its power over commerce. The standard it provided for the licensing of stations was the 'public interest, convenience, or necessity'. Denial of a station license on that ground, if valid under the Act, is not a denial of free speech.'
 
 
 25
 The remaining question presented by stipulation is whether the Commission's failure to issue a license to Idaho Microwave without the non-duplication condition violated Section 9 of the Administrative Procedure Act,5 U.S.C. 1008.[8] The appellants have not seen fit to argue that the Commission violated this section, and we suppose they have abandoned the point. In any event, we hold that the Commission did not violate Section 9 of the Administrative Procedure Act.
 
 
 26
 From the foregoing we conclude that the Commission's order must be upheld.
 
 
 27
 Affirmed.
 
 
 
 [1]
 47 U.S.C. 319(c)
 
 
 [2]
 'Authorizations (including initial grants, modifications, assignments, and renewals) in this service to establish or operate stations used to relay television broadcast signals to a community antenna television system (CATV) shall be subject to the condition that the licensee carrier shall include the following requirements in its tariffs or in any contracts for service to any CATV system:
 '(1) If the CATV system operates in an area within the predicted Grade A contour of any authorized and operating television broadcast station or any television broadcast station subsequently authorized by the Commission and placed in operation, the CATV system, upon the request of such television broadcast station, shall carry the signal of such station without any material degradation in quality (within the limitations imposed by the technical state of the art), shall not duplicate a program being simultaneously broadcast by said station, and shall not present a program to be carried by said station during the period commencing 15 days prior to its broadcast by the station and ending 15 days after such broadcast, provided the CATV operator has received notification from the broadcast station as soon as possible and in any event, at least seven days in advance of the date of the program's scheduled presentation over the CATV system.
 '(2) Notwithstanding any requirement in paragraph (2) of this section, a CATV system affording protection to a single television broadcast station is not required to delete reception over its system of a program if, in doing so, there would be available for reception by its subscribers less than two network programs (including one from the local station being carried over the system pursuant to the above requirements).'
 
 
 [3]
 47 U.S.C. 152(b), 319(c) and 326
 
 
 [4]
 5 U.S.C. 1008
 
 
 [5]
 The Commission said in its opinion:
 'Since, in this case, the grant of the authorization was made four months prior to the institution of rule making, and Idaho Microwave is currently utilizing the microwave facilities, the Commission is deciding this case on the merits. * * *'
 
 
 [6]
 Section 326, 47 U.S.C. 326, is as follows:
 'Nothing in this chapter shall be understood or construed to give the Commission the power of censorship over the radio communications or signals transmitted by any radio station, and no regulation or condition shall be promulgated or fixed by the Commission which shall interfere with the right of free speech by means of radio communication.'
 
 
 [7]
 Carter Mountain Transmission Corp. v. Federal Communications Comm., 116 U.S.App.D.C. 93, 321 F.2d 359 (1963)
 
 
 [8]
 Section 9 is as follows:
 'In the exercise of any power or authority--
 '(a) No sanction shall be imposed or substantive rule or order be issued except within jurisdiction delegated to the agency and as authorized by law.
 '(b) In any case in which application is made for a license required by law the agency, with due regard to the rights or privileges of all the interested parties or adversely affected persons and with reasonable dispatch, shall set and complete any proceedings required to be conducted pursuant to sections 1006 and 1007 of this title or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, no withdrawal, suspension, revocation, or annulment of any license shall be lawful unless, prior to the institution of agency proceedings therefor, facts or conduct which may warrant such action shall have been called to the attention of the licensee by the agency in writing and the licensee shall have been accorded opportunity to demonstrate or achieve compliance with all lawful requirements. In any case in which the licensee has, in accordance with agency rules, made timely and sufficient application for a renewal or a new license, no license with reference to any activity of a continuing nature shall expire until such application shall have been finally determined by the agency.'