MEREDITH BROADCASTING COM-
PANY, Petitioner,

v.

FEDERAL COMMUNICATIONS
COMMISSION

and

United States of America, Respondents.
No. 19626.

United States Court of Appeals
District of Columbia Circuit.

Argued May 9, 1966.

Decided June 28, 1966.

Mr. David H. Lloyd, Washington, D. C., with whom Mr. Andrew G. Haley, Washington, D. C., was on the brief, for petitioner.

Mr. John H. Conlin, Associate General Counsel, Federal Communications Commission, with whom Asst. Atty. Gen. Donald F. Turner, Messrs. Henry Geller, General Counsel, Jerome Nelson, Counsel, Federal Communications Commission, and Howard E. Shapiro, Attorney, Department of Justice, were on the brief for respondents. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, and Mr. Lionel Kestenbaum, Attorney, Department of Justice, also entered appearances for respondents.

Before DANAHER, Circuit Judge, BASTIAN, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BASTIAN, Senior Circuit Judge:

We have before us for review the action of the Federal Communications Commission (Commission) on June 21, 1965, adopting an interim policy governing the acquisition of television stations in the top television markets during the pendency of rule-making proceedings. Meredith Broadcasting Company (Meredith) is located in one of these markets.

In the licensing of television stations, the Commission has for many years been concerned with effective competition and undue concentration of power. The present rule regarding multiple ownership permits, without regard to market size, the ownership of seven television stations, only five of which may be in the VHF band. This rule has been in effect since 1953.

After preliminary proceedings having to do with multiple ownership, but which are not necessary to a decision in this case, the Commission, on June 21, 1965, issued its notice of proposed rule-making, the announced purpose of which was to bring the Commission's existing regulations into conformity with the proposed amendment of § 73.636(a) (2) of its Rules, which is set forth in the margin.[1] Along with this notice of rule-making, the Commission issued a public notice announcing its interim policy dealing with concentration and diversification of the broadcast media in the following language:

"Absent a compelling affirmative showing, we will designate for hearing any application filed after December 18, 1964 for acquisition of a VHF station in one of the top 50 television markets, if the applicant or any party thereto already owns or has interests in one or more VHF stations in the top 50 markets; we shall treat likewise any application to acquire inter-

1. "It is proposed to amend § 73.636(a) (2) and to add a new Note 5 at the end of the section to read as follows:

"§ 73.636 Multiple ownership.

(a) * * *

* * * * *

(2) Such party, or any stockholder, officer or director of such party, directly or indirectly owns, operates, controls, or has any interest in, or is an officer or director of any other television broadcast station if the grant of such license would result in a concentration of control of television broadcasting in a manner inconsistent with public interest, convenience, or necessity. In determining whether there is such a concentration of control, consideration will be given to the facts of each case with particular reference to such factors as the size, extent and location of area served, the number of people served, and the extent of other competitive service to the areas in question. The Commission, however, will in any event consider that there would be such a concentration of control contrary to the public interest, convenience or necessity for any party or any of its stockholders, officers, or directors to have a direct or indirect interest in, or be stockholders, officers, or directors of any of the following:

(i) More than seven television broadcast stations, no more than five of which may be in the VHF band.

(ii) More than three television broadcast stations or more than two VHF television broadcast stations in the fifty largest television markets. The market size will be determined by the ranking of the American Research Bureau, on the basis of net weekly circulation for the most recent year. Any party believing that the ranking describes his particular circumstances inaccurately, or wishing to suggest another ranking, may do so and such suggestions will be considered on their merits.

* * * * *

"NOTE 5: Paragraph (a) (2) of this section will not be applied so as to require divestiture, by any licensee, of broadcast facilities or newspaper interests owned prior to _____, 1965. That paragraph will not apply to applications for assignment of license or transfer of control filed in accordance with §§ 1.-540(b) or 1.541(b) of this chapter, or to applications for assignment of license or transfer of control to heirs or legatees by will or intestacy if the assignment or transfer to the heirs or legatees does not create interests proscribed by the paragraph. Paragraph (a) (2) will apply to all applications for new stations, and to all other applications for assignment or transfer. Commonly owned stations or stations prohibited by paragraph (a) (2) may not be assigned or transferred to a single person, group, or entity except as provided in this Note."

ests in two or more VHF stations in these markets if the applicant now has no interests in VHF stations in these 50 markets. We are adopting this policy because under presently existing circumstances, we cannot normally make the required finding that grant of an application for a second VHF station in the top 50 markets will serve the public interest without giving the proposal the detailed scrutiny of a hearing. [The top 50 markets were selected by using the 1963 American Research Bureau ranking based on net weekly circulation.]"

It is quite obvious that the interim policy, by its very terms, does not prohibit any person from acquiring any particular television station. It establishes no substitute standards. It simply requires that certain applications be subject to hearing; and it does not follow that, because the hearing is had, the application will be denied.

After exhausting its administrative remedies, Meredith filed the present proceedings seeking to have this Court hold invalid the " 'Interim Policy Concerning Acquisition of Broadcast Stations' of June 21, 1965," and seeking to have this Court enter a decree "setting aside the action and enjoining its effectiveness." Thus it appears that the petition for review is directed toward the interim policy and in no way involves the rulemaking proceedings.

Meredith claims that the action of the Commission is arbitrary and capricious in that it contravenes previous practice, was taken in the absence of appropriate proceedings, is unsupported by the findings, and fails to establish standards. Claim is also made that the interim policy is contravention of Sections 2 and 4 of the Administrative Procedure Act and Sections 309(a) and 405 of the Communications Act of 1934, as amended, and deprives petitioner of its right to due process. We disagree.

It is estimated that it will be something in the neighborhood of two years before the proposed rule may be adopted, modified or rejected,[2] and the Commission believes that in the meantime the interim policy is required.

■ The matter before us largely depends upon the question of whether the interim policy is procedural or substantive. Our consideration leads us to the conclusion that it is procedural and that it does not contravene the Administrative Act. It does not interfere with any existing station and, certainly at the present time, Meredith is not affected by it except as to possible future applications. So far as the record shows, Meredith is not a party to any application within the limits of the interim policy, which, as stated by the Commission in its June 21 notice, is as follows:

"During the interim period, we are not applying the proposed rule. * * [W]hat we do propose is to designate for hearing applications concerning which we do not feel able to make a finding that a grant would serve the public interest. This procedure is required by the Communications Act. Section 309 of the Act provides for a grant only where the Commission can find that a grant will serve the public interest. Under Section 309(e), if the Commission for any reason is unable to make that finding, it is required to designate the application for hearing. Our interim policy is necessary to prevent the compounding of situations which we believe may be contrary to the public interest. In this situation, we could not justify making grants without hearing."

It is to be noted that the interim policy merely provides for an examination in detail of applications which would increase the concentration of control over broadcast stations in the top 50 markets. The Commission does not attempt

---

2. Although the notice of June 21, 1965, set the rule-making proceedings to commence October 1, 1965, that date was continued, on request of an association composed of television station multiple owners, to April 1, 1966, and later to October 3, 1966, without objection by Meredith.

to apply the proposed rule during the interim period and there is nothing in the disputed policy to indicate that any sale, acquisition or assignment of a television station will, after consideration, be denied pending the completion of the rule-making. The notice simply provides that a hearing may be required if a licensee holding a given number of licenses seeks to acquire one or more additional licenses in the top 50 market areas. As of the present time, it cannot be said that Meredith has been injured in any way. Indeed, it may never be.[3]

We believe that F. C. C. v. Pottsville Broadcasting Co., 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940), makes it clear that a license is issued subject to the provisions of the Act; that no permanent rights are acquired against the public; that anti-trust problems do or may exist; and that the Commission is entitled, in its expertise, to formulate policy in aid of the congressional purpose. Indeed, we have recognized this in upholding the Commission in its issuance of "freeze" orders at various times in the past, a procedure much more drastic than the present interim policy.[4]

We have examined the decision of the Supreme Court in United States v. Storer Broadcasting Co., 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956), relied on by petitioner. That case involved standards which were patently substantive and directly affected Storer's interests. Nothing in *Storer* demands review of the present action of the Commission at this stage; and petitioner's challenge thereto is premature.

We are not impressed by Meredith's contention that it might possibly be hindered in the conduct of its business and that its opportunity to acquire stations in the top 50 markets "has * * *

been effectively curtailed." Certainly its contention that the action of the Commission "has affected the values of the stations owned by the licensees" is without basis in the record.

The petition for review is dismissed.

---

3. Cf. United Air Lines v. Civil Aeronautics Board, 97 U.S.App.D.C. 42, 44–45, 228 F.2d 13, 15–16 (1955).

4. See, among others, Wentronics, Inc. v. F. C. C., 118 U.S.App.D.C. 36, 331 F.2d 782 (1964); Mesa Microwave, Inc. v. F. C. C., 105 U.S.App.D.C. 1, 262 F.2d 723 (1958).