Edwin R. FISCHER, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

The Tidewater Broadcasting Company,
Inc., Intervenor.

The TIDEWATER BROADCASTING
COMPANY, Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee.

Nos. 21942, 22400.

United States Court of Appeals
District of Columbia Circuit.

Argued April 28, 1969.

Decided July 14, 1969.

I. 28 U.S.C. § 333.

552

Mr. William P. Bernton, Washington, D. C., for appellant in No. 21,942.

Mr. Robert M. Booth, Jr., Washington, D. C., for appellant in No. 22,400 and intervenor in No. 21,942.

Mr. Edward J. Kuhlmann, Counsel, Federal Communications Commission, with whom Mr. Henry Geller, Gen. Counsel, Mr. John H. Conlin, Associate Gen. Counsel, and Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, were on the brief, for appellee.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge, and McGOWAN, Circuit Judge.

PRETTYMAN, Senior Circuit Judge:

These cases, consolidated for argument here, challenge orders of the Federal Communications Commission which denied applications for radio licenses in Newport News and Smithfield, Virginia. Appellant Edwin R. Fischer proposed the former, while The Tidewater Broadcasting Company, Inc., sought a license for Smithfield. The applications were designated for hearing as mutually exclusive. After extensive and somewhat complicated proceedings, the Commission rejected both applications.[1]

The problem is created by the fact that radio beams, unless controlled, radiate in circles from the transmitting station. Therefore a station located on or near the borderline between a city and a rural community will serve equidistantly into both areas. A prospective station owner desirous, whether with or without good faith, of serving the needs and interests of an extensive rural community, may find himself with corresponding coverage into a much more lucrative urban area with its national advertising. To deal with such a situation the Commission fashioned and issued a statement of

1. After an initial hearing the examiner's decision issued July 5, 1961 (2 F.C.C.2d 368) recommended a grant of the Tidewater application. Some three years later, while Fischer's exceptions to this decision were still pending, a further hearing was ordered for consideration of a possible overlap violation that would occur if the grant to Tidewater was upheld. The examiner again recommended a grant to Tidewater. 2 F.C.C.2d 408 (1965). The promulgation of the Section 307(b) Policy Statement, infra note 2, resulted in a third hearing and the examiner's continued preference for Tidewater. 12 F.C.C. 2d 481 (1967).

policy in respect to it.[2] This statement was premised upon Section 307(b) of the statute,[3] which directed the Commission to allocate radio stations equitably among the states and communities. The policy statement established the rebuttable presumption that, where an applicant's proposed 5 mv/m daytime contour penetrates the geographic boundaries of any community with a population of over 50,000 persons, and that community has a population of at least twice that of the appellant's specified community, the applicant "realistically proposes to serve that larger community rather than his specified [smaller] community." [4] In essence the presumption put the onus on suburban applicants to demonstrate that the desired grant is in fact a request for a transmission outlet for the outlying community rather than just another central city licensee. In both the policy statement and the Commission's order remanding these applications, the parties were advised that the hearing would give them an opportunity to rebut the presumption by exploring all matters relating to the question of whether the proposal would realistically serve its specified station location or would serve some other larger city. Special emphasis was directed to the areas of programming and expected revenue sources. The policy statement also set forth the procedure to follow should an applicant fail to establish that he will realistically serve the specified station location, i. e., fail to rebut the presumption. The procedure would have the applicant considered as an applicant for the larger community; as such he would have to meet the technical requirements of the Commission's rules for such stations.

Norfolk is a thriving seaport metropolis of over 300,000 population, situated on the Atlantic coast at the south side of the entrance to Chesapeake Bay. Newport News, population about 114,000, is immediately across the mouth of the Bay to the north. Smithfield is a small town (pop. 3000) some 23 miles west; it is the center of a rural community noted for its production of peanuts and curing of hams. Either of the radio stations of the power and type sought in the applications now at bar for Newport News and Smithfield would overlap a large part of Norfolk.

Appellant Fischer, seeking a license for Newport News, apparently considered an attempt to rebut the presumption fruitless; [5] he chose to introduce no evidence at the remand hearing and was "satisfied" to have his application considered as one for a Norfolk station. Appellant Tidewater on the other hand, seeking a license for Smithfield, sought to rebut the presumption by introducing evidence tending to show that it would serve Smithfield and the surrounding community, a region, they argued, needing a transmission service of its own.

After hearings, the examiner reaffirmed her decision, recommending grant of Tidewater's application and denial of Fischer's. The primary reason for Fischer's denial was his failure to satisfy two Rule requirements (§§ 73.188 (b) (1) and 73.30(a)), one of which specifies minimum business area cover-

2. Policy Statement on Section 307(b) Considerations for Standard Broadcast Facilities Involving Suburban Communities, 2 F.C.C.2d 190 (1965).

3. 49 Stat. 1475 (1936), 47 U.S.C. § 307(b).

4. Policy Statement, *supra* note 2, at 193.

5. Fischer argues before us that this determination was sound in light of the Commission's disregard of a letter sent to it after the promulgation of the policy state-

ment, which he alleges demonstrated sufficient evidence to rebut the presumption. The Commission's answer, with which we agree, points out that this unsolicited letter dealt primarily with Fischer's contention that he was then entitled to the grant due to Tidewater's overlap problem (a contention with which the Commission subsequently did not agree) and in no way prejudiced his opportunity at the remanded hearing to present evidence on why the presumption should not apply to his application.

age requirements [6] and the other requiring that the main studio be located in the principal community or at the transmittal site. In respect to Fischer's application, the examiner found that (1) the proposed coverage would not satisfy the coverage rule and (2) the studio location was designated by the applicant to be in Newport News and thus not in the principal community, Norfolk.[7] Further the examiner ruled that Fischer made no showing that would justify a waiver of these rules.

The examiner ruled that Tidewater had made a sufficient showing to rebut the presumption and had made a realistic showing that it would provide a local transmission service at its specified station location, Smithfield.

■ The Commissioner affirmed the examiner as to Fischer but rejected her recommendation that Tidewater had adequately rebutted the presumption. The Commission was not satisfied that Tidewater had presented the necessary proof to justify a grant for a 10,000 watt, nondirectional station designated for a community of 3,000 persons when that station would provide the most powerful daytime service to a metropolitan area of some 736,000 persons.[8] The Tidewater application was then considered, as Fischer's had been, as an application for the larger community, Norfolk, and was denied for a failure to meet the technical requirements for such a station (§ 73.188 (b) (1)).

■ The thrust of Fischer's argument here is against application of the policy statement. He says this case is not an appropriate one for such application, that the language is too vague, and that Newport News needs the station. We find the asserted reasons unimpressive. We think the policy statement is a reasonable provision for the administration of Section 307 of the Act,[9] and the Newport News situation appears on this record to be an uncomplicated subject for its application.[10]

■ Tidewater argues that the policy statement is too vague to be understood by applicants. We reject the argument. True, the statement indicates flexibility, but it is intended to state a policy, not a formula.[11] The contentions of the applicants as depicted in the record, and of

6. 47 C.F.R. § 73.188(b)(1) provides that:
   "(b) The site selected should meet the following conditions:
   "(1) A minimum field intensity of 25 to 50 mv/m will be obtained over the business or factory areas of the city."

7. As the hearing examiner pointed out, applicant Fischer, even though advised that his application would be considered as one for the larger community and that the technical requirements for such applications would have to be met, chose not to amend his application before or during the hearing to satisfy those requirements.

8. The Tidewater Broadcasting Co., Inc., et al., 12 F.C.C.2d 471, 477–78 (1968).

9. This court has approved the Commission's use of the policy statement in all the cases before us. See Miners Broadcasting Service v. FCC, No. 21937 (D.C. Cir., March 20, 1969) (unreported); Northeast Broadcasting, Inc. v. FCC, 130 U.S.App.D.C. 278, 400 F.2d 749 (1968); Woodland Broadcasting Co. v. FCC, 134 U.S.App.D.C. ——, 414 F.2d 1160 (June 6 1969); Jupiter Associates, Inc. v. FCC, No. 22145 (D.C.Cir. July 2, 1969).

10. Fischer makes before this court, and for the first time, the threshold argument that the 307(b) policy statement was a substantive act by the Commission and could not be adopted without formal rulemaking as prescribed by Sec. 4 of the Administrative Procedure Act. This was dealt with by the Commission in its reconsideration of the policy statement. (Fischer was not a party to this, even though he could have been.) Clearly this policy statement was not the issuance of substantive rules. Cf. Kessler v. FCC, 117 U.S.App.D.C. 130, 306 F.2d 673 (1963). It merely set out a general policy and guidelines to govern future hearings involving suburban applicants. Meredith Broadcasting Co. v. FCC, 124 U.S. App.D.C. 379, 365 F.2d 912 (1966).

11. Northeast Broadcasting, Inc. v. FCC, 130 U.S.App.D.C. 278, 278, 400 F.2d 749, 757 (1968).

other applicants in reported cases,[12] show they understood what the issues and the pertinent factors are. Moreover the remand order which preceded this denial was specific in stating areas of concern. Tidewater also argues that the Commission failed to appreciate that the high power proposed was necessary to serve so widespread a rural area. After the application had been finally rejected, Tidewater proposed, in an amendment accompanying its motion for reconsideration, to reduce the proposed power somewhat and to directionalize the proposed antenna. The change in plan comes too late. Clearly the examiner's recommendation might well have stood if it had been supported at that time by such proposals. But we think an applicant should not be permitted to exhaust all means of achieving the greater urban coverage and then, only upon failure in that direction, to turn its attention to its declared rural or suburban aims and purposes. The Commission is not required to play games with applicants.

Affirmed.

12. See cases cited *supra* note 9; Donnelly C. Reeves, 6 F.C.C.2d 531 (1967); Clay Broadcasters, Inc., 4 F.C.C.2d 932 (1966); KEZY Radio, Inc., 3 F.C.C.2d 407 (1966); West Central Ohio Broadcasters, Inc., 3 F.C.C.2d 223 (1966); Jersey Cape Broadcasting Corp. (WCMC), 2 F.C.C.2d 942 (1966).