Erwin A. LaROSE and Jimmy Lee
Swaggart, Appellants,

v.

**FEDERAL COMMUNICATIONS
COMMISSION.**

**No. 72-2069.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 18, 1973.

Decided March 26, 1974.

———◆———

Lauren A. Colby, Washington, D. C.,
for appellants.

Philip Permut, Counsel, F. C. C., with
whom John W. Pettit, Gen. Counsel, and
Joseph A. Marino, Associate Gen. Coun-
sel, F. C. C., were on the brief, for ap-
pellee.

Before McGOWAN, ROBINSON and
MacKINNON, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant LaRose, having been desig-
nated by a federal court as receiver in
bankruptcy of the assets of a corpora-
tion, and, as such, having been recog-
nized by the Federal Communications
Commission as the involuntary assignee
of that corporation's license to operate a
radio station, sought in due course to
sell and assign the license for the bene-
fit of the bankrupt estate. His initial
attempt was rebuffed by the Commis-
sion on the ground that the transfer
would have violated the Commission's
so-called *Second Thursday* principle.
The Commission then denied renewal of
the license, and thereafter refused, on
the ground of administrative finality, to
entertain a petition for reconsideration
accompanied by a new proposal of sale.
We think that, in the circumstances of
this case, the Commission has misap-
plied the finality doctrine.

I

The question before this court is
whether the Commission abused its dis-
cretion in refusing to reopen its pro-
ceedings to consider the renewal of the
license and its simultaneous sale and as-
signment to appellant Swaggart. Since
resolution of this question depends so
heavily on the facts, a detailed review of
the entire history of the case is indicat-
ed.

Capital City Communications, Inc., the
previous licensee of radio station

WLUX, obtained its license through an FCC approved assignment from KCIL, Inc. It now appears that some of the representations made by Capital in gaining Commission approval of that transfer may have been misleading, and that Capital thereafter may have operated the station in repeated violation of Commission rules. Thus, when time for renewal of the Capital license arrived, the Commission designated the Capital renewal application for a hearing on issues involving alleged violations of FCC rules and regulations. Order and Notice of Apparent Liability, F.C.C. 7–1140 (Oct. 27, 1970).

Some four months thereafter, KCIL, a substantial creditor of Capital, filed a petition to have Capital adjudicated a bankrupt, which was allowed in March of 1971. Appellant LaRose was subsequently appointed receiver of the assets and authorized by the referee in bankruptcy to operate the station until LaRose could arrange for its disposition. LaRose then sought and obtained from the Commission approval of the involuntary assignment to him of the WLUX license, and was substituted for Capital City in the pending license renewal proceedings.

LaRose negotiated the sale of the Capital assets and license to United Broadcast Industries, Inc. The proceeds from the purchase price of $250,000.00 were calculated to support the administrative expenses of the bankruptcy as well as to provide a 97.51% recovery of all creditors' claims. LaRose obtained approval of the referee in bankruptcy and thereafter petitioned the Commission for termination of the Capital license renewal proceedings and for approval of the sale and assignment of the WLUX license to United. In support of these requests, LaRose asserted that the proposed sale would comply with the FCC *Second Thursday* doctrine governing a receiver's disposition of the license of a station whose predecessor licensee stood accused of wrongdoing.[1] Additionally, LaRose maintained that the issues scheduled for hearing in the original renewal proceeding were effectively mooted by the adjudication of bankruptcy, his designation as receiver and licensee, and the negotiation of a sale and assignment of the WLUX license to a candidate who would operate the station in the public interest.

In February of 1972, the FCC denied both LaRose's request for termination of the original renewal proceedings and for assignment of the license to United, finding that the proposed sale failed to satisfy the *Second Thursday* doctrine requirement that the benefits to be received from it by persons charged with wrongdoing in the operation of the bankrupt station be outweighed by the public interest in protecting innocent creditors. Capital City Communications, Inc., 33 F.C.C.2d 703 (1972). After denying appellant LaRose's petition for reconsideration of those rulings, 34 F.C.C. 2d 685 (1972), the Commission proceeded to a consideration of renewal of the Capital license and, based on the misconduct of the principals of Capital, refused to renew the WLUX license to LaRose. 37 F.C.C.2d 164 (1972).[2]

---

1. Second Thursday Corp., 22 FCC 2d 515 (1970), 25 FCC 2d 112 (1970).

2. Assigning a license to a receiver in bankruptcy, and thereafter refusing to renew that license solely on the basis of the previous misconduct of the involuntary assignor, presents some logical difficulties. In the normal case the receiver will in no way be associated with the previous misdeeds of the bankrupt involuntary assignor. And, if the renewal issue is framed in terms of the assignor's misdoings, the receiver will not be ideally situated to gather adequate information to attempt to prove the case for license renewal. Thus, the manner in which the agency has framed the issue virtually assures that it will receive only very limited adversarial development of the underlying facts.

More importantly, this treatment of the license renewal question does little to accommodate the Commission's mandate to regulate in the public interest. This mandate is as broad as it is difficult to define. *See generally* Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841 (1970), cert. denied, 403 U.S. 923, 91 S.Ct.

Shortly thereafter, LaRose petitioned for reconsideration of the non-renewal of the WLUX license and offered to the Commission a second proposal for sale and assignment, which he asserted would offer no possibility of benefiting the miscreant owners of Capital City. The Commission refused to consider these petitions, however, determining that the public interest embodied in the doctrine of administrative finality precluded considering LaRose's proposal of a second sale after his failure on the first. Appellant LaRose and appellant Swaggart, the proposed purchaser in the second transaction, appeal.[3]

## II

The Commission has gradually evolved a special policy for the disposition of a license held by a trustee in bankruptcy. In the normal non-bankruptcy situation, the Commission will not approve any assignment of a license until the existing authorization is renewed. Thus, if the assignor's qualifications are insufficient to enable him to renew his license, the Commission will not authorize assign-

2229, 2233, 29 L.Ed.2d 701 (1971); Radio Relay Corp. v. FCC, 409 F.2d 322 (2 Cir. 1969). Administrative agencies have been required to consider other federal policies, not unique to their particular area of administrative expertise, when fulfilling their mandate to assure that their regulatees operate in the public interest. For example, the Supreme Court recently held that the Federal Power Commission should consider the anticompetitive effect of the issuance of a security in determining whether that issuance would be compatible with the public interest. Gulf States Utilities v. FPC, 411 U.S. 747, 93 S.Ct. 1870, 36 L.Ed.2d 635 (1973). *See also* Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608 (2d Cir. 1965), cert. denied sub nom., Consolidated Edison of New York v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540 (1966). While such decisions cannot be automatically transported from one administrative agency to the next, City of Lafayette v. SEC, 147 U.S.App.D.C. 98, 454 F.2d 941, 948 (1971), aff'd sub nom., *Gulf States Utilities, supra*, they do indicate that agencies should constantly be alert to determine whether their policies might conflict with other federal policies and whether such conflict can be minimized.

While the Commission's *Second Thursday* doctrine for judging proposed assignments accommodates the policies of federal bankruptcy law with those of the Communications Act, the manner of its disposition of the license renewal issue in this case suggests that the FCC has not yet reconciled the two bodies of law in dealing with this aspect of the problem. In the case in which the license has been involuntarily assigned to a receiver in bankruptcy, the conduct of the previous licensee is of only indirect relevance to the renewal issue. As in the case of the *Second Thursday* doctrine itself, the Commission should assure that licensees do not use bankruptcy as a means of circum-

venting their obligation to operate in the public interest. However, as in *Second Thursday*, that question should be considered in light of the public interest in the protection of innocent creditors. The broad question, therefore, would seem to be whether the public interest would best be served by permitting the receiver to continue to operate the station for a limited time in order to enable him to dispose of the asset. Like most FCC license determinations, this question would require evaluation of a number of factors, *e. g.*, the receiver's ability temporarily to operate the station successfully; the existence of other parties who seek construction permits for the same or overlapping frequencies and the relative merits of their applications; and the likelihood of the receiver's disposition of the license within a reasonable time. While the establishment of policies that would accommodate these diverse interests is by no means an easy task, it would seem to be an endeavor that would be more in keeping with the overall agency responsibility than is the FCC's present course.

Our disposition of this appeal makes it unnecessary for us to rule on this question definitively. As the Commission on reconsideration will immediately be presented with a proposed sale and assignment, it is possible that no question will arise concerning appellant LaRose's qualifications to serve as a temporary licensee.

3. Appellants challenge the Commission's decision not to renew the WLUX license and its refusal to reconsider that nonrenewal and to examine the proposed sale by LaRose to Swaggart. 37 F.C.C.2d 164 (1972) and 38 F.C.C.2d 1010 (1972). The Commission's previous determination that the first proposed sale violated the FCC *Second Thursday* doctrine, 33 F.C.C.2d 703, reconsideration denied, 34 F.C.C.2d 685 (1972), is not in issue here.

ment of the license to an otherwise qualified recipient. *See generally* Jefferson Radio Co., Inc. v. FCC, 119 U.S.App.D.C. 256, 340 F.2d 781 (D.C. Cir. 1964); United Television Co. of New Hampshire, 38 F.C.C.2d 400 (1972); Gross Broadcasting Co., 31 F.C.C.2d 226 (1971). However, in recognition of the public interest in protecting innocent creditors, the Commission will approve the sale and assignment of the bankrupt's license when the transaction will not unduly interfere with the FCC mandate to insure that broadcast licenses are used and transferred consistently with the Communications Act. As the Commission recently explained its *Second Thursday* doctrine:

> [D]espite the general rule that an assignment of license will not be authorized during the pendency of a hearing involving the character qualifications of a licensee, the Commission will permit such upon a showing that alleged wrongdoers will derive no benefit, either directly or indirectly, from the sale or will derive only minor benefit which is outweighed by the equities in favor of innocent creditors.

Shell Broadcasting, Inc., 38 F.C.C.2d 929, 931 (1973). *See also* Image Radio Inc., 15 F.C.C.2d 317, 319 (1968).

The Commission's regular practice is to approve an involuntary assignment of the license to a receiver in bankruptcy, who must then find a qualified purchaser and structure the sale in compliance with the mandate of *Second Thursday*. Thus, in evaluating the petition for assignment of the license from the receiver to the proposed assignee, the Commission must assess both the assignee's qualifications and the public interest considerations embodied in *Second Thursday*, which relate to the minimization of profit by the bankrupt parent-licensee.[4]

## III

Appellant LaRose initially arranged for a transfer that, according to his judgment, would have satisfied the requirements of the Commission's stated policy. While he obtained the referee's approval of the sale, LaRose failed in this regard with the Commission. LaRose then arranged another sale on different terms to another buyer (appellant Swaggart) which the Commission refused to consider.

The Commission's reason for this latter action was stated to be the public interest in the finality of administrative decisions. Quoting from this court's decision in Fischer v. Federal Communications Commission, 135 U.S.App.D.C. 134, 417 F.2d 551, 555 (1969), in which we held that administrative agencies need not "play games with applicants" who change plans only after failing to succeed in advancing more favorable proposals, the Commission observed that "the Receiver would have us commence the entire process anew for the purpose of considering a different proposal . . . . [A]t some point the administrative proceeding must be brought to a conclusion and we believe that point has been reached here." 38 F.C.C.2d 1101 (1972).

Administrative finality so employed does not go to the Commission's jurisdiction to entertain the petition for reconsideration of the non-renewal of the WLUX license. The Commission retained authority to reconsider its earlier decision on that score until an appeal was filed in this court, or until the time for filing such an appeal had expired. *See* Greater Boston Television Corp. v. FCC, 149 U.S.App.D.C. 322, 463 F.2d 268, 282–283 (1971); W. S. Butterfield Theatres v. FCC, 99 U.S.App.D.C. 71, 237 F.2d 552, 555 (1956). Thus, the considerations of public interest inher-

---

4. The qualifications of the original licensee are irrelevant to this determination, as are those of the receiver in bankruptcy who is at the time licensee by virtue of the involuntary assignment. In some cases an additional issue will be interjected by the filing of an independent petition to operate on that frequency. In such a case, the Commission would conduct a comparative hearing between the proposed assignee and the other petitioner. *See* Arthur A. Cirilli, 2 F.C.C.2d 692, 693 (1966).

ent in the *jurisdictional* concept of administrative finality are not significantly implicated. Rather, the public interest considerations to be preserved in refusing to reconsider renewal of the WLUX license and its simultaneous sale and assignment to appellant Swaggart are those protected by any denial of any attempted second bite at the administrative apple. Paramount among those interests is the promotion of administrative efficiency. Additionally, the Commission's refusal to reconsider can in some cases serve to prevent the possible duplicity of parties who attempt to urge one goal, and, after having failed at that, thereafter advance a less desirable but more plausible position. *See Fischer, supra.*

However, as the Commission has recognized, *Fischer* does not announce an iron-clad rule of administrative finality. Indeed, after having prevailed before this court in *Fischer,* the FCC thereafter waived its prohibition against consideration of repeated proposals, consolidated those proposals with others, and considered the entire matter anew. Cape Fear Broadcasting, 33 F.C.C.2d 697, 698 (1971). In other instances the Commission has likewise recognized the need to reopen records and reconsider matters. *See e. g.,* In re Cathryn Murphy, 42 F.C.C.2d 346 (1973).

While this decision to reopen proceedings for reconsideration is one committed to the discretion of the agency, Radio Corp. of America v. United States, 341 U.S. 412, 420–421, 71 S.Ct. 806, 95 L.Ed. 1062 (1951); WEBR v. FCC, 136 U.S.App.D.C. 316, 420 F.2d 158, 165–166 (1969), that discretion must be exercised without caprice. In this case, we are persuaded that the Commission failed to do so in refusing to consider the merits of the second proposed sale and assignment offered by appellant LaRose within weeks of the Commission's refusal to renew the WLUX license. *Cf.* Enterprise Co. v. FCC, 97 U.S.App.D.C. 374, 231 F.2d 708 (1955).

To the extent that the Commission's refusal to reopen may reflect a feeling that appellant LaRose should have abandoned the first proposed sale and assignment at an earlier date in the administrative proceedings, it fails to recognize the constraints imposed by appellant's status as a receiver in bankruptcy, as well as the unclear state of the FCC *Second Thursday* doctrine itself. As a receiver, appellant LaRose was an officer of the court, Powell v. Maryland Trust Co., 125 F.2d 260, 271 (4th Cir.), cert. denied, 316 U.S. 671, 62 S.Ct. 1041, 86 L.Ed. 1746 (1942), and charged with the duty of disposing of the assets in a manner that maximized the interests of the creditors. Moreover, the *Second Thursday* doctrine hardly held up a beacon of clarity that definitively foretold the Commission's disposition of the first proposed assignment. Application of *Second Thursday* requires an *ad hoc* balancing of the possible injury to regulatory authority that might flow from wrongdoers' realization of benefit against the public interest in innocent creditors' recovery from the sale and assignment of the license to a qualified party. The first proposed sale and assignment was very beneficial to Capital's creditors and appeared to benefit the principal wrongdoers of Capital only indirectly. Moreover, appellant LaRose felt that this indirect benefit—in this case, the elimination of some of the wrongdoers' secondary liability on certain financial obligations—was mitigated by the fact that those persons were judgment-proof.

In this posture, appellant LaRose was well within the bounds of rationality in terms of faithfulness to his duties as a receiver. And, having arranged for the sale and obtained the referee's approval, LaRose was required to make all reasonable efforts to obtain Commission approval. Without expressing any judgment on the Commission's application of the *Second Thursday* doctrine to the first sale transaction, *see* note 3, *supra,* we do not think LaRose could be faulted for his repeated attempts to persuade the FCC that the balance of public interests lay on his side of the scales.

The Commission's refusal to consider the second proposal frustrates the public interests recognized in *Second Thursday* itself. Since the license is by far the most valuable asset of Capital City, the Commission's refusal effectively deprives creditors of any significant recovery of the moneys they have advanced.[5]

Finally, the Commission's prior approval of the involuntary transfer of the Capital license to appellant LaRose resulted in the continued operation of the station and the incurring of new liabilities from advancements of credit which made that operation possible. This obvious consequence of the assignment and the Commission's permitting the continued operation of the station[6] is at least a factor the Commission should have recognized in determining whether to reconsider the matter.

In most cases, the interests of administrative finality will suffice to support a Commission's discretionary decision to refuse to reconsider an earlier decision. On the facts of this case they will not; and it was an abuse of discretion to refuse to reconsider renewal of the WLUX license and appellant LaRose's tendered proposal for its sale and assignment to appellant Swaggart.

We express no views on whether the proposed sale to appellant Swaggart will satisfy the Commission's *Second Thursday* doctrine. That issue has not yet been considered by the Commission and is not before us. We simply conclude that, on the facts of this record, it was an abuse of discretion for the Commission to take the actions that prevented it from addressing that issue.

Accordingly, we reverse the Commission's order of November 8, 1972 denying reconsideration of its order of September 20, 1972 denying renewal of the WLUX license, and we remand the case to the Commission with directions to consider whether the proposed sale and assignment of such license to appellant Swaggart would promote the "public interest, convenience, and necessity," 47 U.S.C. § 310(b).

It is so ordered.

---

5. We note in passing that one of those innocent creditors is the federal government itself. Capital City has an outstanding income tax obligation for $24,558, and it appears that the proceeds from the second proposed sale would support a recovery of 51% of this amount. Likewise, sale of the license to appellant Swaggart would support recovery of a similar percentage of some $4,500 in state and local taxes. *See* Exhibit B, Appendix, at 67.

6. The Commission has the power to suspend licenses in an appropriate case. 47 U.S.C. § 303.