**STORER COMMUNICATIONS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

Media Access Project, et al., the Committee For Full Value of Storer Communications, Inc., National Black Media Coalition, Intervenors.

**NATIONAL BLACK MEDIA COALITION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

Nos. 85–1246, 85–1257.

United States Court of Appeals, District of Columbia Circuit.

Argued May 2, 1985.

Decided May 2, 1985.

Opinion Filed May 14, 1985.

As Amended May 14 and May 30, 1985.

Arthur B. Goodkind, Washington, D.C., with whom Bernard Koteen and Mary M. Hendriksen, Washington, D.C., were on brief, for appellant, Storer Communications, Inc.

David Honig, was on brief, for Nat. Black Media Coalition.

Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., with whom Jack D. Smith, Gen. Counsel and C. Grey Pash, Jr., Counsel, F.C.C., Washington, D.C., were on brief, for appellee.

Henry Geller, Washington, D.C., with whom Andrew Schwartzman and Robert M. Gurss, Washington, D.C., were on brief, for intervenors, Media Access Project, et al.

Douglas M. Kraus, New York City, with whom Stephen A. Sharp, and Mark E. Herlihy, Washington, D.C., were on brief, for intervenor, The Committee for Full Value of Storer Communications, Inc.

Robert M. Gurss, Washington, D.C., was on brief, for amicus curiae, NAACP, urging reversal.

Before TAMM, WALD and STARR, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM.

In a Memorandum Opinion and Order dated April 22, 1985, the Federal Communications Commission ("FCC" or "Commission") determined that, in the specific circumstances presented here where a committee of minority shareholders of Storer Communications, Inc. ("Storer") mounted a proxy contest with the purpose of replacing the existing board of directors, any resulting change in control would not constitute a "substantial change" in control requiring full compliance with the pre-grant applica-

tion approval procedures of 47 U.S.C. § 309. The Commission concluded that the public interest would be satisfied by Commission review of the shareholder committee's actions pursuant to a modified version of the FCC's "short-form" transfer of control application procedures. We affirm the Commission's decision.

## I. BACKGROUND

Section 310(d) of the Communications Act ("the Act"), 47 U.S.C. § 310(d), provides in pertinent part:

No ... station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, *or by transfer of control of any corporation holding such ... license,* to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby.

(emphasis added). Section 309(b) of the Act provides that before certain license applications can be granted, including applications for the assignment or transfer of a license, the Commission must issue a public notice followed by a 30-day waiting period in which, pursuant to section 309(d), any "party in interest" may file a petition to deny the application.[1] Section 309(c) of the Act, however, provides that certain types of applications, *e.g.*, transfers not involving a "substantial change" in control, are excepted from the procedures set forth in section 309(b). Pursuant to Commission regulations, applications for a transfer subject to the notice and 30-day waiting period of section 309(b) are filed on FCC Form 315 ("long form") whereas applications falling within one of the exceptions listed in section 309(c) are filed on FCC Form 316 ("short form"). *See* 47 C.F.R. § 73.3540 (1984). Applications filed on the short form are not subject to the 30-day waiting period, petitions to deny, or the potential of a hearing which are entailed in applications filed on the long form.

The events culminating in the present action began on March 19, 1985, when a shareholder group, known as The Committee for Full Value of Storer Communications, Inc. ("the Committee"), notified the Commission by letter that it had acquired ownership or voting rights in 5.3 percent of Storer's stock and that it intended to conduct a proxy contest to replace Storer's existing board of directors with a new slate of nominees. *See* Committee's Letter of Notification (March 19, 1985), Appellant's Appendix ("Appendix") at 1. The Committee's nominees pledged, if elected, to implement a program to maximize the value of the shareholders' investment in Storer by selling the company's assets and distributing the net proceeds to the shareholders. In its letter of notification, the Committee asserted its position that the election of a new board of directors by existing shareholders would not be a transfer of control requiring prior Commission consent under the Act. *Id.* at 2. The Committee, however, further stated:

We are mindful that in the past, the Commission has used the "short form" application for consent to transfer control (FCC Form 316) as a means to act on such proposals. Despite our view that the "short form" is unnecessary, we enclose for your convenience an original and two copies of a completed form. If the Commission considers the form to be necessary, it is respectfully requested

---

1. If a petition to deny is filed, the applicant is given an opportunity to respond, *see* 47 U.S.C. § 309(d)(1), and then the Commission follows one of two courses of action:

If the Commission finds on the basis of the application, the pleadings filed, or other matters which it may officially notice that there are no substantial and material questions of fact and that a grant of the application would be consistent with [the public interest], it shall

make the grant, deny the petition, and issue a concise statement of the reasons for denying the petition.... If a substantial and material question of fact is presented or if the Commission for any reason is unable to find that grant of the application would be consistent with [the public interest], it shall [designate the application for a hearing pursuant to subsection (e) ].

47 U.S.C. § 309(d)(2).

that the application be granted as expeditiously as possible.

*Id.* at 1–2. Storer filed a petition for dismissal of the application on the grounds that control of Storer rested in the existing board of directors; consequently replacing the existing board with a new board "would constitute a voluntary *de facto* transfer of control" which could be accomplished only with prior Commission consent pursuant to long-form, not short-form, procedures. *See* Storer's Petition for Dismissal of Application (March 26, 1985), Appendix at 17, 18.

On March 29, 1985, the FCC's Mass Media Bureau ("the Bureau"), finding that ultimate control of the corporation rested with the shareholders and not the board, agreed with the Committee's position that no transfer of control requiring prior Commission approval was at issue in the proposed election of a new board. *See* Mass Media Bureau Letter (March 29, 1985), Appendix at 87.[2] The Bureau, nonetheless, granted the Committee's short-form application "to remove any uncertainty as to [the Committee's] authority to proceed." *Id.* at 89. Storer filed a petition for review on April 1, 1985, seeking full Commission review of the Bureau's decision. On April 25, 1985, the Commission issued its opinion

reversing the Bureau in part by finding a cognizable transfer of control but upholding the Committee's right to proceed in its proxy solicitation without the necessity of first undergoing the long-form approval process. *See* FCC Memorandum Opinion and Order (April 22, 1985) ("FCC Opinion"), Appendix at 278.[3] Storer then filed this appeal pursuant to 42 U.S.C. § 402(b).[4]

## II. Discussion

This case presented the FCC with a question of first impression: Whether the election of a new board of directors, solely as a result of a proxy contest unaccompanied by any significant change in ownership interests or voting rights, constitutes a transfer of control within the meaning of section 310(d), and, if so, whether the transfer is excepted from long-form procedures by virtue of section 309(c)(2)(B) excepting applications which do not involve a "substantial change in ownership or control." The Commission, noting that prior precedent establishes that control need not be formal, legal control but may consist of actual working control, *see, e.g., Lorain Journal Co. v. FCC*, 351 F.2d 824, 829 (D.C.Cir. 1965), *cert. denied*, 383 U.S. 967, 86 S.Ct. 1272, 16 L.Ed.2d 308 (1966); *Powel Crosley, Jr.*, 11 F.C.C. 3 (1945), concluded that

2. Specifically, the Bureau stated:
 Storer is a large, publicly traded corporation, over which no one claims *de jure* control. Whether or not the management has day-to-day control delegated to it by the Board, and the Board has control delegated to it by the shareholders, ultimate control does lie with the shareholders. To hold otherwise would be contrary to the most basic concepts of corporate governance. Thus, we accept the contention of the Committee, reflected in our records, that ultimate control of the corporation is in the shareholders.
 *Id.* at 88 (footnote omitted).

3. While three Commissioners agreed that the election of a new board would constitute a transfer of control within the meaning of section 310(d), the remaining two Commissioners agreed with the Bureau that no transfer of control was at issue. *See* Statement of Chairman Mark S. Fowler, Concurring and Dissenting in Part, Appendix at 296; Statement of Commissioner Mimi Weyforth Dawson, Dissenting in Part and Concurring in Part, *id.* at 318. Chairman Fowler and Commissioner Dawson, how-

ever, agreed that if there was a transfer of control, it did not amount to a substantial change in control requiring long-form procedures. Commissioner Patrick agreed that long-form procedures were not required. The remaining two Commissioners, Quello and Rivera, however, dissented, believing that the election of a new board would constitute a substantial change in control requiring compliance with the long-form procedures. *See* Statement of Commissioner James H. Quello, Concurring in Part and Dissenting in Part, *id.* at 308; Commissioner Henry M. Rivera, Concurring in Part and Dissenting in Part, *id.* at 325 (but stating that compliance with long-form procedures *after* the election was sufficient).

4. The National Black Media Coalition, an intervenor in *Storer Communications, Inc. v. FCC,* No. 85–1246, also appealed the Commission's decision pursuant to 42 U.S.C. § 402(b). This court ordered the two appeals consolidated on April 30, 1985.

the election of the new board would constitute a cognizable transfer of control requiring prior Commission approval pursuant to section 310(d). This finding is not challenged on appeal. The Commission, however, further concluded that, based upon the specific circumstances of this case, the election of the new board would not be a "substantial change" in control requiring long-form procedures within the meaning of section 309. The Commission, thus, found that a modified short-form procedure would be the appropriate procedure for obtaining FCC approval in this case. The sole issue on review is whether the Commission's decision was arbitrary, capricious or an abuse of discretion.

█ The resolution of the issue before this court is essentially one of statutory construction. If Congress has expressed its intent unambiguously then both the agency and this court must give effect to that intent.

> If, however, the Court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* —— U.S. ——, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). It is well-established that an agency's interpretation of its own statute is entitled to great deference and "should be followed unless there are compelling indications that it is wrong." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969); *accord FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981).

In this case, neither the statute nor its legislative history is dispositive. As discussed in Part I, section 310(d) provides that no license shall be transferred through a transfer of control of any corporation holding such a license except upon prior application to the Commission and a Commission finding that the transfer will be in the public interest. Section 309 sets forth procedures to be followed for obtaining Commission approval of an assignment or transfer. The general procedure is a long-form procedure (FCC Form 315) which entails public notice and a 30-day waiting period in which petitions to deny may be filed. Section 309(c), however, establishes exceptions to this long-form procedure. At issue here is section 309(c)(2)(B) excepting transfers involving Commission

> consent to an involuntary assignment or transfer under section 310[ (d) ] of this title or to an assignment or transfer thereunder which does not involve *a substantial change in ownership or control.*

47 U.S.C. § 309(c)(2)(B) (emphasis added). What constitutes a substantial change in control is not defined in the statute.

There is little in the legislative history to further illuminate the meaning of this exception. Congress merely stated:

> Subsection (c) of section 309 ... lists several specific exceptions to the 30-day waiting period required by subsection (b). These specific exceptions deal with situations where the matters considered are of minor concern and where the 30-day waiting period and the filing of a petition to deny would serve no useful purpose. The remedy afforded by section 405 of the Act would, however, be available in the event the Commission erred.

H.R.Rep. No. 1800, 86th Cong., 2d Sess. 11 (1960). Congress did, however, expressly grant the Commission broad procedural discretion to implement the Act as a whole and section 309(c) in particular. Section 309(g) expressly authorizes the Commission "to adopt reasonable classifications of applications and amendments in order to effectuate the purposes of this section." 47 U.S.C. § 309(g). Finally, Congress also expressly stated its intent that such classifications "could be adopted by the Commis-

sion on a case by case basis or by rule." H.R.Rep. No. 1800, 86th Cong., 2d Sess. 13 (1960).

In this case, the Commission, faced with a question of first impression, considered the relevant factors and reached a reasoned conclusion with respect to the facts of this particular adjudicatory proceeding which presented a need for prompt action. The Commission noted that this decision was limited to the specific circumstances of this case and in no way prejudiced the Commission's adoption of alternate procedures in the future. *See* FCC Opinion, Appendix at 284. The Commission further stated its intention to issue a Notice of Inquiry with respect to how proxy contests should be treated under the statute. *Id.* On the facts presented, we cannot say that the Commission acted arbitrarily, capriciously, or abused its discretion.

The Commission cited a number of considerations which, taken as a whole, led it to conclude that the change in control was not "substantial." The Commission first noted that the Committee proposed only to solicit proxies for the election of new directors. The Committee did not propose any change in stock ownership or any change in the voting rights of the shareholders. The shareholders, thus, retained their ultimate right of control. Under the applicable corporation laws of Ohio, the shareholders must elect a board of directors annually and 25% of the shareholders may at any time call a special meeting to remove the board. The Commission further noted that any subsequent decision by the newly-elected board to liquidate the assets of the company would require a two-thirds vote of the shareholders and would be subject to prior Commission approval pursuant to the long-form procedures. Thus, the Commission concluded that the shareholders retained ultimate control and that any change in the composition of the board at the annual shareholders' meeting would result from the shareholders' exercise of their substantial control, not a transfer of that control. *Id.* at 288.

Despite appellants' argument that the Commission's decision "here is directly in conflict with all Commission precedent," *see* Storer Brief at 33, we find that the Commission correctly concluded that "no past Commission case governs here." FCC Opinion, Appendix at 286. We further agree with the Commission's assertion that its determination that the election of a new board in this case would not constitute a substantial change in control is consistent with its past practice with respect to the use of long- versus short-form procedures, as established in specific adjudications and its regulations. As noted in the Commission's opinion, the test generally applied by the Commission in the past for determining whether a transfer constitutes a substantial change in control has linked a substantial change in control to some transfer of stock or on-going voting interests. *See id.* at 289. The Commission's regulations setting forth the types of transfers or assignments which can properly be filed on a short form (FCC Form 316) further supports the finding that the Commission's established practice is to consider changes in control non-substantial if not accompanied by some change in ownership or voting rights. *See* 47 C.F.R. § 73.3540(f) (1984). The Commission specifically found 47 C.F.R. § 73.3540(f)(5) analogous to the matter at issue in this case. FCC Opinion, Appendix at 289. That section provides that an "[a]ssignment or transfer from a corporation to a wholly owned subsidiary thereof or vice versa, or where there is an assignment from a corporation to a corporation owned or controlled by the assignor shareholders without substantial change in their interests" is a non-substantial change in control which may be filed on a short form (FCC Form 316).

This is not to say that a substantial change in control may never occur without some change in ownership or voting rights, but only that this is a major factor in determining whether a substantial change has occurred. Appellants oversimplify the matter in asserting that there are two types of control: *de jure* control resulting from ownership or *de facto* control result-

ing from actual working control. *See* Storer Brief at 22–26. Since no change in ownership is involved here, appellants assert that the Commission must have found a *de facto* transfer of control, and that such a transfer of working control must be deemed substantial. *Id.* at 27–33. Determining issues of control, however, is a complex task which must be done on a case-by-case basis. There may be varying degrees of working control exercised at different levels of the corporation. Corporate officers or station managers may exercise substantial day-to-day working control; yet FCC approval would not be required before a corporation was allowed to replace such personnel. Directors may also change on an evolutionary basis, *e.g.*, several directors may retire or resign over the course of a year. The Commission only requires that such evolutionary changes be reported on an annual Ownership Report. *See* 47 C.F.R. § 73.3615 (1984).

▮ The Commission, thus, is required to engage in making fine distinctions with respect to gradations of control in determining whether any particular transfer of control is a substantial change. We find that the Commission's reliance on whether a transfer of control is accompanied by a change of ownership or voting rights as a major factor aiding in the determination of whether a change is substantial to be entirely reasonable. In the present case, the shareholders could elect the new board members at the annual meeting and subsequently decide not to approve their liquidation plan or even to remove them and reseat the old board. On the other hand, an incumbent board or executive officer who has actual working control which is backed up by significant ownership interests or voting rights possesses a measurably greater degree of control—one which is not exercised solely by the grace of others possessing the ultimate authority or control.

▮ Turning to procedural considerations, the Commission noted that the corporate entity would remain the same; hence much of the information required by the long form would already be on file—such as financial information about the corporation, its contracts, and network affiliations. *See* FCC Opinion, Appendix at 291. Less duplicative information is required by the short form. The Commission did not, however, decide to require only the short-form application. Instead the Commission adopted a modified short-form procedure to assure that it could reasonably determine that the transfer would be in the public interest. The additional information required by the modified procedure related to the qualifications of the proposed directors with respect to the following: "(1) citizenship; (2) whether they have been subject to adverse findings or consent decrees regarding any 'felony, antitrust, unfair competition, fraud, unfair labor practices, or discrimination'; and (3) information as to any attributable interests in cable television systems, newspapers or other broadcast stations." *Id.* at 291.

Appellants, nonetheless, claim that this modified short-form procedure is inadequate. We find appellants' arguments unpersuasive. We reject at the outset appellants' assertion that the Commission erred in adopting such a procedure in the context of an adjudication. *See supra* pp. 440–441 (the Commission may adopt reasonable classifications of applications on a case-by-case basis or by rule). Second, appellants and intervenors argue that the procedures are inadequate because they allow for no scrutiny of the equal employment opportunity *bona fides* of the nominees. As the Commission noted, however, Storer's equal employment opportunity program is reflected in its latest renewal application, the corporation continues to be responsible for its implementation, and the Committee has represented that there would be no changes. FCC Opinion, Appendix at 293; FCC Brief at 31 n. 23. The modified procedure, moreover, requires information respecting adverse findings of discrimination on the part of any of the nominees. This is sufficient to uncover any conduct reflecting adversely on their character or qualifications as proposed transferees. The Com-

mission's modified short-form procedure adequately assured that the proposed nominees were qualified. In fact, Storer has raised no material question as to the qualifications of the nominees. Cf. *Tele-Prompter Cable Systems, Inc.*, 40 F.C.C.2d 1027 (1973) (Commission consented after the fact to a newly elected board where members' qualifications had been submitted to the Commission and the members were qualified).

We note that the modified short-form procedure adopted does not leave appellant and intervenors completely without a forum for comment or recourse in the case of a Commission mistake. The rules provide for the filing of informal objections before the application is granted. *See* 47 C.F.R. § 73.3587 (1984). The statute also provides a safety valve through petitions for reconsideration, *see* 47 U.S.C. § 405, and revocation, *see* 47 U.S.C. § 312.

■ Finally, we find that the Commission reasonably resolved a number of competing policy considerations in this case. There was a need for prompt action in the face of a pending proxy contest. The Commission has a duty to implement the Communications Act but also must attempt to do so in a manner as consistent as possible with corporate and federal security laws' protection of shareholders' rights. *See La-Rose v. FCC*, 494 F.2d 1145, 1146 n. 2 (D.C.Cir.1974) ("[A]gencies should constantly be alert to determine whether their policies might conflict with other federal policies and whether such conflict can be minimized."). Whereas the long-form review only requires a 30-day waiting period, if petitions to deny are filed, it may take the Commission a significant additional period of time to consider the filings and determine whether a hearing is necessary.

For tactical reasons, proxy contests are often not begun until within weeks prior to a shareholder meeting. Requiring long-form review could very well result in unduly insulating incumbent directors from challenge.[5] *See* FCC Opinion, Appendix at 290 & n. 9. Such a result would not only be inconsistent with federal securities law protecting corporate democracy but also with the purposes of section 309. Section 309 pre-grant procedures were drafted in order to prevent parties from using the Commission's procedures for purposes of delay and to minimize the burden on Commission resources. *See* H.R.Rep. No. 1800, 86th Cong., 2d Sess. 9–14 (1960). The Commission did not act unreasonably or improperly by taking these factors into consideration in reaching its final determination.

### III. CONCLUSION

In conclusion, appellants argue that a long-form review was required before the Commission approved the Committee's application for a transfer of control. We have considered and found unpersuasive appellants' major contentions of error addressed in this opinion as well as all other arguments advanced by appellants and intervenors. We thus conclude that the Commission's adoption of the modified short-form procedure, under the circumstances of this case, was a reasonable exercise of its discretion under the Act.[6] Accordingly, the Commission's decision is hereby

*Affirmed.*

---

**5.** The Commission, of course, acknowledges that it would be obliged to require long-form review despite this result if it were necessary to satisfy the terms of section 309. *See* FCC Opinion, Appendix at 290 n. 9. Having determined that section 309 did not require long-form review under the circumstances of this case, however, the Commission properly took into account various policy considerations in determining the appropriate procedure to require.

**6.** We note that only one Commissioner, Commissioner Quello, agreed with Storer's position that prior approval on the basis of long-form, rather than short-form, review was required. The other dissenting Commissioner, Commissioner Rivera, stated that an after-the-election long-form review would be sufficient. *See supra* note 3.