**In re PACIFIC LAND SALES, INC., Debtor.**

**Dale J. PARSONS, Jr., Virginia Parsons, and Blue Wave Broadcasting, Inc., Appellants,**

**v.**

**Gary A. PLOTKIN, Chapter 7 Trustee, Appellee.**

**BAP No. CC–94–2267–HMeS.
Bankruptcy No. SV91–69664–GM.
Adv. No. 92–03933.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 21, 1995.

Decided Sept. 27, 1995.

Chapter 7 Debtor. The Trustee recovered a radio station from Dale J. Parsons, Jr. and Virginia Parsons (collectively, "the Parsons"), and Blue Wave Broadcasting, Inc. ("Blue Wave"), as an unauthorized postpetition transfer from the Debtor. Howard Green ("Receiver") was appointed as a receiver by the Bankruptcy Court to take possession of the radio station. The Parsons subsequently took actions that allegedly interfered with the Receiver's possession of and attempts to sell the radio station. The Bankruptcy Judge granted the Trustee an injunction against the Parsons and Blue Wave. Dale J. Parsons, Jr., and Blue Wave (collectively, "Appellants") appeal. We AFFIRM the Bankruptcy Judge's order granting the injunction.

## FACTS

1. *The Unauthorized Postpetition Transfer.*

On April 11, 1994, the Bankruptcy Judge entered a judgment, together with findings of fact and conclusions of law, against the Parsons and Blue Wave. The terms of this judgment were appealed to the Bankruptcy Appellate Panel, but the panel dismissed the appeal as untimely on July 28, 1994 (BAP No. CC–94–1481). The panel's dismissal has been affirmed by the Ninth Circuit Court of Appeals. *Parsons v. Plotkin (In re Pacific Land Sales, Inc.)*, 56 F.3d 73 (9th Cir.1995) (table).[2] The following discussion is drawn from the Bankruptcy Court's findings of fact.

In 1986, the Debtor acquired a radio station ("KLHI") known as FM–101, call letters KLHI, together with the FCC broadcast license. Kenneth S. Hayashi ("Hayashi") was the former president and sole shareholder of the Debtor.

Hayashi incorporated an entity known as Pacific Isle Broadcasting, Inc. ("Pacific Isle"). Pacific Isle was 70% owned by Hayashi, and 30% owned by Peter Martin ("Mar-

Ramon J. Ferrer, Wailuku, HI, for Appellants.

David L. Hankin, Los Angeles, CA, for Appellee.

Before HAGAN, MEYERS and SULLIVAN[1], Bankruptcy Judges.

### AMENDED OPINION

HAGAN, Bankruptcy Judge:

Gary A. Plotkin ("Trustee") is the Trustee for Pacific Land Sales, Inc. ("Debtor"), a

---

1. Honorable Donal D. Sullivan, Chief Bankruptcy Judge for the District of Oregon, sitting by designation.

2. This decision is unpublished. Pursuant to Ninth Circuit Rule 36–3, we may cite to this

decision as it is relevant to the present appeal under the doctrine of law of the case. *See Thomas v. Bible*, 983 F.2d 152, 153 n. 1 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).

tin").[3] KLHI was transferred to Pacific Isle in 1990 for no consideration. Pacific Isle was incorporated solely for the purpose of taking title to and possession of KLHI. It had no start-up capitalization other than KLHI's assets and liabilities; it had no business other than KLHI; its board of directors never met; and its only liabilities were those assigned to it at the time KLHI was transferred to Pacific Isle, or that were incurred in the course of KLHI's operation.

Despite the transfer, the Debtor at all times considered KLHI to be one of its assets. The Debtor treated KLHI as a single entity together with its other businesses for the purposes of financial disbursements and cash flow. Prior to the transfer, KLHI prepared monthly financial packages for the Debtor. This practice continued unchanged after the transfer. Hayashi retained sole and complete decision-making power over KLHI, though he delegated this authority to Martin to some extent.

The Debtor began negotiating to sell KLHI to the Parsons and Blue Wave in September of 1990. The Parsons and Blue Wave conducted extensive due diligence in examining KLHI's financial status. The Parsons and Blue Wave also had notice that they were dealing with the Debtor. The sale was concluded on April 23, 1991, for a total purchase price of $500,000, plus the assumption of KLHI's liabilities. The Parsons and Blue Wave paid a $60,000 down payment, and satisfied the remaining portion of the purchase price with unsecured promissory notes. No payment has ever been made on those notes.

On March 28, 1991, prior to closing, the Debtor filed a petition under chapter 11 of Title 11, United States Code. Both Martin and the Debtor's in-house counsel informed the Parsons and Blue Wave of the filing, and suggested they obtain legal advice regarding the effect of the bankruptcy filing on the as-yet uncompleted sale.

## 2. *The Action to Avoid the Transfer.*

The following discussion of the facts is taken from the documents in the record.

In July, 1992, the Trustee commenced the underlying adversary proceeding by filing a complaint against the Parsons and Blue Wave. The complaint alleged, among other causes of action, that the transfer was an unauthorized postpetition transfer of assets of the estate, recoverable under section [4] 549.

The Parsons and Blue Wave filed a motion to dismiss the complaint, alleging, among other things, that the Trustee had failed to join Pacific Isle, whom they alleged was an indispensable party to the action. The Bankruptcy Judge denied the motion to dismiss. The Parsons and Blue Wave then filed a third-party complaint against Pacific Isle and Martin. The proof of service alleged that service of the third-party complaint was made by service on the Trustee.

The Parsons and Blue Wave twice moved for default judgments against Pacific Isle. The Trustee objected to entry of default on both occasions, arguing he was not the Trustee for Pacific Isle, that to his knowledge Pacific Isle was not in bankruptcy, and he was not otherwise authorized to accept service of process for Pacific Isle.[5]

After a trial, the Bankruptcy Judge granted judgment to the Trustee against the Parsons and Blue Wave on the ground the transfer was an unauthorized postpetition transfer. The judgment, together with findings of fact and conclusions of law, were entered on April 11, 1994. (Hereinafter, this judgment

---

3. This fact is not drawn from the Bankruptcy Court's findings of fact, but from the admissions of the parties.

4. Unless otherwise noted, all references to "section" are to the respective section of Title 11, United States Code.

5. The parties contend the clerk entered a default against Pacific Isle on August 9, 1993. There is no evidence of this in the Bankruptcy Court's docket. The Parsons and Blue Wave filed a

request for default against Pacific Isle, and a request for default against Martin, on July 28, 1993. These requests for default judgment were entered *on the docket* on August 9, 1993, in a column entitled "Date of Entry." The Trustee's objection to the defaults, filed on August 3, was also entered on August 9, together with the notation "Status conference: 8–23–93 @ 11 a.m., Rm 1568." There is no order in the docket disposing of the request for entry of default.

will be referred to as the "April 11 judgment.") The findings of fact have been summarized above. The Bankruptcy Judge concluded "Pacific Isle was not a valid corporation and was merely the alter-ego of the Debtor." Appellants' Excerpts of Record (hereinafter "Appellants' ER") at 111. The shifting of KLHI from the Debtor to Pacific Isle was not a transfer, but "a non-transfer by [sic] a shell corporation." *Id.* On the date the Debtor filed bankruptcy, KLHI was property of the Debtor "in the possession, custody and control of its alter-ego Pacific Isle." *Id.* The Parsons were initial transferees, and therefore liable under section 550(a)(1). Even if the Parsons were immediate transferees, the Parsons could not claim section 550(b)'s "good faith" defense; they did not purchase KLHI "for value." *Id.*

In its judgment, the Bankruptcy Court held: (1) the transfer of KLHI to the Parsons and Blue Wave, "including, without limitation, KLHI's Federal Communications Commission ('FCC') broadcast license," was avoided, "subject to the approval of the FCC"; (2) the trustee was entitled to recover KLHI "and KLHI's FCC broadcast license, subject to FCC approval"; and (3) the receiver would remain in possession of KLHI pending completion of the sale of KLHI. Appellants' ER at 97. While noting that Pacific Isle did not appear at trial, the Bank-

ruptcy Judge granted judgment to Pacific Isle and Martin on the third-party complaint. Appellants' ER at 96–97.

The Parsons and Blue Wave appealed this judgment. As noted, this appeal was dismissed by the Bankruptcy Appellate Panel as untimely, and the dismissal has been affirmed by the Court of Appeals.

### 3. *Actions After the Judgment.*

The Bankruptcy Judge entered an order approving the sale of KLHI to Lahaina Broadcast Company in May, 1994. On October 4, 1994, the Trustee filed an emergency motion for an injunction against the Parsons and Blue Wave.[6] The motion was supported by the declarations of the Receiver and of David L. Hankin, attorney for the Trustee. The injunction was requested for two purposes: (1) enforcement of the prior orders of the court; and (2) enforcement of the section 362 automatic stay.

The allegations in the declarations may be summarized as follows. First, the Receiver alleges the Parsons have filed "literally thousands of pages of documents containing scores if not hundreds of misrepresentations with the FCC for one purpose:" to impede the Receiver from obtaining the necessary FCC approvals to carry out the purpose of the receivership.[7] Trustee's Excerpts of

6. The motion was encaptioned "Emergency Motion for (1) Injunction Preventing Dale J. Parsons, Jr., Virginia Parsons, Blue Wave Broadcasting, Inc. and Ramon Ferrer From Engaging In Any Further Conduct Which Interferes With Any of the Assets of Radio Station KLHI And Receiver Howard R. Green's Efforts to Sell KLHI Including Actions Pending Before the Federal Communications Commission; (2) Order to Show Cause Why Sanctions, Or in the Alternative, Certification of Contempt Findings to the District Court Should Not Be Issued Against Dale J. Parsons, Jr., Virginia Parsons, Blue Wave Broadcasting, Inc., Ramon Ferrer and Lee J. Peltzman."

7. The primary misrepresentation complained of by the Receiver involves a letter mailed from Lee J. Peltzman, communications attorney for the Parsons, to the FCC. The Receiver filed an application for an involuntary transfer of the broadcasting license from Dale Parsons to himself. The FCC, after reviewing the Bankruptcy Court's judgment on the postpetition transfer action, concluded that the assignment of the license

from Pacific Isle to Dale Parsons was never a valid assignment, and that therefore Pacific Isle holds the license. The FCC indicated it would transfer the license from Pacific Isle to the Receiver if the Bankruptcy Court entered an order directing the Receiver to take possession of KLHI from Pacific Isle. The Trustee and the Receiver stipulated to such an order.

Mr. Peltzman then mailed a letter to the FCC, objecting to the stipulated order. The letter represented that the stipulation was not an order, despite the fact the stipulation states "It is so ordered," followed by the bankruptcy judge's signature. The letter contended the Bankruptcy Court has not issued an "order" because it does not have jurisdiction over Pacific Isle. The letter contended the Bankruptcy Court recognized it did not have such jurisdiction, because the Court denied the Parsons' motion to dismiss for failure to join Pacific Isle as an indispensable party. The letter did not reveal that the Parsons and Blue Wave subsequently filed a third party complaint in that action, or that the Court entered a judgment against them with regard to their third party complaint.

Record (hereinafter "Trustee's ER") 7, at 3. Second, the Parsons are alleged to have appeared and made false representations before the State of Hawaii Department of Land and Natural Resources to prevent the Receiver from obtaining approval for a new transmitter location for KLHI.[8] Third, Dale Parsons filed a state court action against Martin and Pacific Isle on September 12, 1994, alleging, among other things, a cause of action based on fraudulent concealment of the transfer of KLHI from the Debtor's bankruptcy proceeding. As an adjunct to this complaint, Dale Parsons filed a motion for a temporary restraining order to prevent Pacific Isle from transferring any of its assets, specifically including the KLHI broadcast license.[9]

On October 4, 1994, the Bankruptcy Court held an emergency hearing by telephone conference call. The only transcript of this hearing was provided by the Trustee, but stricken from the record at the Appellants' request. The Judge then entered the order from which the Appellants appeal.

4. *Terms of the Bankruptcy Court's Injunction.*

The Bankruptcy Court order (as amended by an errata) provides in its relevant part as follows:

(1) The Bankruptcy Court has jurisdiction over Pacific Isle.

(2) KLHI and its assets are property of the Debtor's bankruptcy estate, whether in the possession of the Debtor or of Pacific Isle, its alter ego.

(3) The Parsons, Blue Wave, and all of their agents, are enjoined from:

(a) filing, continuing, or pursuing any judicial proceeding, including the state court action, that in any way affects, directly or indirectly, the receiver, the receivership, the trustee, or KLHI or its assets, including KLHI's broadcast license, absent further order of the court;

(b) filing with the FCC any documents or other items that are false or misleading or contain misrepresentations or omissions of fact, that in any way affect, directly or indirectly, the receiver, the receivership, the trustee, or KLHI or its assets, including KLHI's broadcast license;

(c) disseminating to any person or entity in the state of Hawaii any documents or other items that are false or misleading or contain misrepresentations or omissions of fact, that in any way affect, directly or indirectly, the receiver, the receivership, the trustee, or KLHI or its assets, including KLHI's broadcast license;

(d) engaging in any conduct that interferes with the receiver obtaining a new transmitter location on behalf of KLHI;

(e) engaging in any conduct that interferes with the business of KLHI, including seeking to secure the possession, custody, or control of any of the assets of KLHI, including the KLHI broadcast license; and

(f) engaging in any conduct that interferes with the operations of KLHI, including seeking to secure possession, custody, or control of any of the assets of KLHI, including the KLHI broadcast license.

(4) The Parsons, Ferrer, and Peltzman are individually and collectively directed to

On September 30, 1994, the FCC mailed a letter to the Bankruptcy Court stating that it would construe the stipulation as the requested order unless it heard differently from the Court, and that it would make a decision on the application as of October 7, 1994. The FCC released its decision on March 7, 1995.

8. The Trustee alleges that Dale Parsons and Ramon Ferrer, the Parsons' attorney, appeared at the hearing and asserted:

that the Transmitter Application belonged not to KLHI but to Dale Parsons; that the Receivership was illegally in possession of KLHI; that the Bankruptcy Court ruled improperly; and the FCC would not consent to the transfer of the KLHI broadcast license to the Receiver or the Buyer.

Trustee's ER 7, at 4–5.

9. Neither the complaint nor the motion for a temporary restraining order revealed to the state court that the bankruptcy court had issued orders regarding the disposition of KLHI, or that the Bankruptcy Court had held KLHI was property of the estate.

immediately withdraw each and every document:

(a) filed after April 11, 1994 (the date of the judgment against the Parsons avoiding the transfer) with the State of Hawaii Department of Land and Natural Resources pertaining to KLHI's transmitter application; and

(b) filed with the FCC or any other state or administrative agency, that (i) was filed ex parte, or (ii) misrepresents orders of the bankruptcy court.

(5) Dale Parsons is stayed from prosecuting the state court action or any other action concerning the subject matter of the state court action, pending further order of the court.

This order was entered on October 14, 1994. The Appellants filed a timely notice of appeal.

5. *Subsequent Events.*

At oral argument before the Panel, the parties noted that a final decision has been entered in the FCC action. Copies of this decision, together with copies of further orders in the State Court action were submitted as supplemental excerpts of the record. The FCC granted the involuntary assignment of the broadcast license from Pacific Isle to the Receiver, and denied Parsons' various objections to the involuntary assignment. *In re Application of Parsons*, 10 F.C.C.R. 2718 (FCC 95–67, issued March 7, 1995). In the State Court action, the State Court granted a motion to dismiss the complaint by Martin, and denied a motion for rehearing.

## ISSUES

Essentially, the Appellants challenge the propriety of the scope of the order granting the injunction. The Appellants assert: (1) the Bankruptcy Court did not have personal jurisdiction over Pacific Isle because of inadequate service of process; (2) the Bankruptcy Court's conclusion that Pacific Isle was the alter ego of the Debtor did not provide jurisdiction over Pacific Isle since the corporations remained separate entities and the Bankruptcy Court incorrectly applied the alter ego doctrine; (3) the Bankruptcy Court

did not have jurisdiction to issue orders concerning the FCC or the KLHI broadcast license; and (4) the Bankruptcy Court cannot stay the pursuit of Pacific Isle in state court because Pacific Isle is not in bankruptcy.

## STANDARD OF REVIEW

"The grant of an injunction is discretionary and is normally reviewed for an abuse of discretion or application of erroneous legal principles." *Hook v. State of Arizona, Dept. of Corrections*, 972 F.2d 1012, 1014 (9th Cir. 1992) (District Court's injunction in support of consent decree).

## DISCUSSION

The proper analysis of this appeal is hampered by the Appellants' casual use of the phrase "jurisdiction over" Pacific Isle, without differentiating between a challenge to personal jurisdiction and a challenge to subject matter jurisdiction. The Appellants ultimately seek to challenge the validity of the April 11 judgment and much of this appeal is actually an appeal of that judgment.

The Appellants challenge the injunction on two levels. First, the Appellants seek a determination that the April 11 judgment was void, in which case the injunction is also void. Second, the Appellants challenge the scope of the injunction, contending it exceeds the scope of the April 11 judgment and/or the findings of fact and conclusions of law made by the Court in issuing that judgment.

1. *The Terms of the April 11 Judgment Are Binding In This Case.*

A. The Panel Does Not Have Jurisdiction to Review the April 11 Judgment.

■ Much of the Appellants' arguments are in substance an attack on the April 11 judgment. However, we do not have jurisdiction to review the merits of that judgment.

As previously noted, the Appellants' appeal from the April 11 judgment was dismissed as untimely filed. Rule 8002 provides the time limits within which a notice of appeal must be filed. "The provisions of Bankruptcy Rule 8002 are jurisdictional; the untimely filing of a notice of appeal deprives the appellate

court of jurisdiction to review the bankruptcy court's order." *Anderson v. Mouradick (In re Mouradick),* 13 F.3d 326, 327 (9th Cir. 1994). *See also Galt v. Jericho–Britton (In re Nucorp Energy, Inc.),* 812 F.2d 582, 584 (9th Cir.1987) (same). "This rigid enforcement is justified by the peculiar demands of a bankruptcy proceeding, primarily the need for expedient administration of the Bankruptcy estate aided by certain finality of orders issued by the Court in the course of administration." *Nucorp Energy,* 812 F.2d at 584 (internal quotations omitted) (quoting *In re Thomas,* 67 B.R. 61, 62 (Bankr. M.D.Fla.1986)). The Court of Appeals has confirmed that there is no appellate jurisdiction to review the April 11 judgment. *Parsons v. Plotkin (In re Pacific Land Sales, Inc.),* 56 F.3d 73 (9th Cir.1995) (table). Under the doctrine of "law of the case," we may not revisit that issue. *See Thomas v. Bible,* 983 F.2d 152, 154–55 (9th Cir.) (noting five exceptions, none of which are applicable here), *cert. denied,* —— U.S. ——, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993).

This is an appeal from the injunction, not an appeal from the April 11 judgment. We do not have jurisdiction to review the merits of the April 11 judgment, and we may not reconsider our power to do so under the "law of the case" doctrine; we therefore must treat the April 11 judgment as valid. *See Wages v. IRS,* 915 F.2d 1230, 1233–34 (9th Cir.1990) (Court of Appeals did not have jurisdiction to review merits of earlier judgment that had not been timely appealed), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991).

**B. The Appellants Do Not Have Standing To Assert A Lack of Personal Jurisdiction Over Pacific Isle.**

■ As noted, the Appellants assert the Panel should find the April 11 judgment void because the Bankruptcy Court did not have personal jurisdiction over Pacific Isle. We assume, for the purposes of argument, that the Bankruptcy Court did not have personal jurisdiction over Pacific Isle. Although a judgment is void if entered without either subject matter jurisdiction or personal jurisdiction, *Wages,* 915 F.2d at 1234, the Appellants do not have standing to assert this issue.

■ Service of process is governed by Rule 4 of the Federal Rules of Civil Procedure, as made applicable to adversary proceedings by Rule 7004 of the Federal Rules of Bankruptcy Procedure. "The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1063, at 225 (1987) (footnote omitted). Strictly speaking, service of process does not directly deal with personal jurisdiction. *Id.* Proper service of the summons is a prerequisite to a court's exercise of personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987).

■ However, it has long been recognized that the adequacy of service of process may be waived by a defendant. *E.g., Harkness v. Hyde,* 98 U.S. 476, 479, 25 L.Ed. 237 (1878) (a defendant does not waive an illegal service of process by making a special appearance to move for dismissal on that ground, but does so "where he pleads to the merits in the first instance, without insisting upon the illegality."). Similarly, personal jurisdiction is an individual right, based in the constitutional requirement of due process. *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978); *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). Like any individual right personal jurisdiction may be waived, either intentionally or through estoppel. *Compagnie des Bauxites,* 456 U.S. at 702–05, 102 S.Ct. at 2104–05 (where corporation refused to comply with discovery orders seeking to establish whether personal jurisdiction existed, the court could properly sanction the corporation by deeming personal jurisdiction to be admitted).

In arguing that Pacific Isle was not subject to the Court's personal jurisdiction because of defective service of process, the Appellants

are in effect attempting to assert Pacific Isle's individual constitutional right to due process. The Appellants do not have standing to do so. As the Supreme Court has stated:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.... Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *stare decisis*.... These two considerations underlie the Court's general rule: "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Barrows v. Jackson,* 346 U.S. [249,] at 255 [73 S.Ct. 1031, at 1034, 97 L.Ed. 1586] (1953). See also *Flast v. Cohen,* 392 U.S. [83], at 99 n. 20 [88 S.Ct. 1942, at 1952 n. 20, 20 L.Ed.2d 947] (1968); *McGowan v. Maryland,* 366 U.S. 420, 429 [81 S.Ct. 1101, 1107, 6 L.Ed.2d 393] (1961).

*Singleton v. Wulff,* 428 U.S. 106, 113–14, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976) (citations omitted).

The Appellants' arguments lie squarely within the first factor noted in the *Singleton* case: Pacific Isle, the holder of the rights, either may not wish to assert them, or may be able to assert them whether the Appellants are successful or not. We can discern no reason here why Pacific Isle would want to assert its due process rights. It has a facially valid judgment in its favor; undoing the judgment would gain it nothing, while exposing it to the risk of a verdict in favor of the Appellants. The Appellants want to assert Pacific Isle's due process rights for Pacific Isle's detriment, not its benefit. Having lost once, they seek to undo the judgment for a second try. A party may not use its own errors as a sword against its opponents.

The Appellants' arguments also implicate the second *Singleton* factor: Pacific Isle will be better able to make decisions regarding those rights, and will be a better advocate for preserving them. As already noted, Pacific Isle has a facially valid judgment in its favor. Pacific Isle, not the Appellants, should decide whether it will rest upon that judgment.

2. *Specific Terms Of The Bankruptcy Court's Injunction.*

The Appellants contend the Bankruptcy Court's injunction prohibits them from appearing in proceedings before the FCC. The Appellants contend the Bankruptcy Court has no jurisdiction over proceedings before the FCC, and cannot issue orders regulating the Appellants' filings before that body. The Appellants base this argument in the assertions that the FCC has exclusive jurisdiction over all matters relating to the broadcast license, and that the broadcast license is not property of the estate and therefore is not subject to the protections of the automatic stay.

A. A Bankruptcy Court Is Not *Per Se* Prohibited From Enjoining Proceedings Before The FCC.

■ Section 301 of Title 47, United States Code, governing licenses for radio communication, provides:

> It is the purpose of this chapter, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license. No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio ... except under and in accordance with this chapter and with a license in that behalf

granted under the provisions of this chapter.

47 U.S.C. § 301.

■ The FCC's jurisdiction is over the suitability of the licensee, not over the property rights involved between the licensee and others. As the Supreme Court has stated:

> Under the present statute, the [Federal Communications] Commission could make a choice only within the scope of its licensing power, *i.e.*, to grant or deny the license on the basis of the situation of the applicant. It could insist that the applicant change its situation before it granted a license, but it could not act as a bankruptcy court to change that situation for the applicant. The public interest, after all, is in the effective use of the available channels, and only to that extent in what particular applicant receives a license. The Commission has said frequently that controversies as to rights between licensees and others are outside the ambit of its powers. We do not read the Communications Act to give authority to the Commission to determine the validity of contracts between licensees and others.

*Regents of Univ. System of Ga. v. Carroll,* 338 U.S. 586, 602, 70 S.Ct. 370, 378–79, 94 L.Ed. 363 (1950) (footnotes omitted) (party was not released from liability for contract damages because the FCC required contracting party to break a contract that violated FCC statutes).

In *Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), a state court found a lessor of a radio station had acquired the lease by fraud, and required the lessor to reconvey the station to the lessee. The Supreme Court stated:

> We have no doubt of the power of the Nebraska court to adjudicate, and conclusively, the claim of fraud in the transfer of the station by the Society to WOW and upon finding fraud to direct a reconveyance of the lease to the Society. And this, even though the property consists of licensed facilities and the Society chooses not to apply for retransfer of the radio license to it, or the [Federal Communications] Commission, upon such application, refuses the retransfer. The result may well be the termination of a broadcasting station. The Communications Act does not explicitly deal with this problem, and we find nothing in its interstices that dislodges the power of the States to deal with fraud merely because licensed facilities are involved. The "public interest" with which the Commission is charged is that involved in granting licenses. Safeguarding of that interest can hardly imply that the interest of States in enforcing their laws against fraud have been nullified insofar as licensed facilities may be the instruments of fraud.

326 U.S. at 131–32, 65 S.Ct. at 1481–82.

The FCC has itself reached a similar conclusion in the present case. *Application of Parsons,* 10 F.C.C.R. 2718.[10] The Bankrupt-

---

**10.** The FCC stated in its decision:

The Commission is obliged to reconcile its policies under the Communications Act with the policies of other federal laws and statutes, including the federal bankruptcy laws in particular. *O.D.T. International [ (KILU(FM) ) ],* 9 FCC Rcd [2575,] at 2576 [ (1994) ] (citing *LaRose v. FCC,* 494 F.2d 1145 (D.C.Cir.1974)); *Arecibo [Radio Corp.],* 101 FCC 2d [545,] at 550 & n. 12 [ (1985) ]; *[D.H.] Overmyer [Telecasting Co., Inc.],* 94 FCC 2d [117,] at 126 [ (1983) ]. Thus, where a bankruptcy court specifically finds that a prior sale of a station and its assets amounts to an improper postpetition transfer, we believe that the public interest is generally best served by deferring to the findings of the court and approving the involuntary assignment of license to the trustee or receiver so that innocent creditors may receive the full protection afforded by federal bankruptcy law.

**12.** This principle is analogous to that in *Arecibo,* where a state court ruled that the current licensee had defaulted on his contractual obligations to the previous licensee and ordered that the station's assets be sold at public auction. The principals of the former licensee succeeded in purchasing the assets and, pursuant to an order of the court, filed an involuntary long-form assignment application with the Commission. Because the assignor refused to sign the application, the Marshal of the Superior Court of Puerto Rico, Arecibo Division, signed in its stead, as ordered by the court. We granted the application, finding that such action would fairly accommodate the policies of the Communications Act and state law, would enable the license to accompany the station's physical assets, and would on balance serve the public interest. In this case, the Bankruptcy Court has found that Pacific Isle was an "alter-ego" of the debtor. The Trustee, who in essence stands in the shoes of the

cy Court therefore had subject matter jurisdiction to enter the April 11 judgment.

■ A court may not enjoin a party from appearing before the FCC entirely. In *Radio Station WOW*, 326 U.S. at 120, 65 S.Ct. at 1476, a fraternal association, the owner of a radio station, leased the station to another party and, with FCC approval, assigned the broadcast license. A member of the owner subsequently filed an action to revoke the lease as having been obtained through fraud. The state court granted a judgment vacating the lease, and the lessee was ordered " 'to do all things necessary' " to effect the return of the license to the owner. 326 U.S. at 130, 65 S.Ct. at 1481. The Supreme Court held:

> To be sure, the [Federal] Communications Commission's power of granting, revoking and transferring licenses involves proper application of those criteria that determine "public convenience, interest, or necessity." Section 307(a), 48 Stat. 1064, 1083, 47 U.S.C. § 307(a). But insofar as the Nebraska decree orders the parties "to do all things necessary" to secure the return of the license, it hampers the freedom of the Society [the owner] not to continue in broadcasting and to restrict itself, as it properly may, to its insurance business. Equally does it prevent WOW [the lessee] from opposing a return to the Society, or ... from seeking another license of its own. These are restrictions not merely upon the private rights of parties as to whom a State court may make appropriate findings of fraud. They are restrictions upon the licensing system which Congress established. It disregards practicalities to deny that, by controlling the conduct of parties before the [Federal] Communications Commission, the court below reached beyond the immediate controversy and into matters that do not belong to it.

326 U.S. at 130–31, 65 S.Ct. at 1481. *See also In re Applications of Arecibo Radio Corp.*, 101 F.C.C.2d 545 (1985) ("We understand the Supreme Court to have held [in *Radio Station WOW* ] that, in taking steps to place a matter before the Commission, a court [cannot] ... prohibit interested parties from making arguments to the Commission concerning the merits of the matter.") (state court marshal signed the documents transferring the broadcast license to the plaintiff pursuant to state court order; FCC approved the transfer).

■ On the other hand, a court may hold a party in contempt for actions performed before the FCC. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), the Supreme Court affirmed a district court's award of sanctions against a party for bad faith conduct. Chambers was the owner of a television station who entered into an agreement to sell the station to NASCO. Chambers subsequently decided he did not want to sell the station, and so informed NASCO. NASCO told Chambers it would file an action in federal court for specific performance, and seek a temporary restraining order preventing the transfer of the station. Chambers then began a campaign of harassment and delay. Among other actions, he sought permission from the FCC to build a new transmitter tower for the station and to relocate the transmission facilities to that site, which was not covered by the contract. Chambers also convinced the officials of his solely owned corporation to file formal oppositions with the FCC to NASCO's pending application for transfer of the license.

In affirming the award of sanctions for contempt, the Supreme Court held such sanctions were not limited to conduct occurring before the court imposing the sanctions.

debtor, successfully sought appropriate relief from the court. Under these circumstances, the principles of Arecibo are controlling.

13. To the extent that Parsons disputes the rulings of the Bankruptcy Court, his remedy lies in an appeal to the appropriate federal court, *see* 28 U.S.C. § 158, and not to the Commission. *O.D.T. International*, 9 FCC Rcd at 2576; *Overmyer*, 94 FCC 2d at 8123. 8 d [sic] As we indicated in *Overmyer*, grant of an involuntary transfer application will not prejudice the trans-

feror's pursuit of appellate relief, because the facility will continue to be under the supervision of the bankruptcy court, which, if instructed by a higher court, can order, subject to the prior consent of the Commission, that control of the facility return to the transferor. 94 FCC 2d at 123–124. *See also Arecibo*, 101 FCC 2d at 551 & n. 13 (grant of long-form assignment application similarly need not await resolution of appeals). *Parsons*, 10 F.C.C.R. 2718 (footnote omitted).

[C]hambers challenges the District Court's imposition of sanctions for conduct before other tribunals, including the FCC, the Court of Appeals, and this Court, asserting that a court may sanction only conduct occurring in its presence. Our cases are to the contrary, however. As long as a party receives an appropriate hearing, as did Chambers, ... the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders.... Here, for example, Chambers' attempt to gain the FCC's permission to build a new transmission tower was in direct contravention of the District Court's orders to maintain the status quo pending the outcome of the litigation, and was therefore within the scope of the District Court's sanctioning power.

501 U.S. at 57, 111 S.Ct. at 2139 (citations omitted).

*See also Rhode Island Hospital Trust Nat'l Bank v. Howard Communications Corp.,* 980 F.2d 823, 829 (1st Cir.1992) (civil contempt sanctions appropriate for Appellants' "various dilatory actions designed to impede FCC approval of the license transfers to the court-appointed receiver," *Id.* at 825, taken in violation of an injunction against disturbing or impeding the receiver).

Other authority authorizes a Bankruptcy Court to enjoin conduct before other tribunals.[11] Section 362 prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A Bankruptcy Court, through the District Court, has exclusive jurisdiction over all property of the estate. 28 U.S.C. § 1334(d).[12] Section 105(a) permits the Bankruptcy Court to enter "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted, the Bankruptcy Court has jurisdiction to adjudicate property rights regarding KLHI itself, and the FCC's jurisdiction is limited to

"mak[ing] a choice only within the scope of its licensing power, *i.e.,* to grant or deny the license on the basis of the situation of the applicant." *Regents of Univ. System of Ga.,* 338 U.S. at 602, 70 S.Ct. at 378. *See also Application of Parsons,* 10 F.C.C.R. 2718 ("While courts may determine the ownership of physical assets, such as station facilities, the Commission retains exclusive authority to determine who shall be licensed to operate broadcast stations.") (citations omitted). Outside of the FCC's exclusive jurisdiction over the licensing power, the Bankruptcy Court has authority to enjoin the Appellants from taking action.

The Bankruptcy Court's decision to issue an injunction relating to proceedings before the FCC thus was not erroneous *per se.*

**B. The Injunction Against the Appellants Did Not Violate the FCC's Exclusive Jurisdiction.**

The issue thus narrows to the question of whether the Bankruptcy Judge properly limited the scope of the injunction. The Appellants specifically challenge paragraphs 8(b) and 8(h) of the injunction. These paragraphs enjoin the Appellants from

(b) filing with the Federal Communications Commission any false and/or misleading documents, papers, things or other items which contain misrepresentations or omissions of fact which pertain to and/or affect in any manner whatsoever, directly or indirectly, the Receiver; the Receivership; the Trustee; radio station KLHI or the assets thereof including, without limitation, the KLHI broadcast license.

\* \* \* \* \* \*

(h) engaging in any conduct, whatsoever, which interferes with the operations of KLHI in any manner whatsoever, directly or indirectly, radio [sic] including, without limitation, seeking to secure the possession, custody and/or

---

**11.** *See Celotex Corp. v. Edwards,* —— U.S. ——, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

**12.** Section 1334 has subsequently been amended. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 104(b), 108 Stat. 4106, 4109 (1994). Because this case was filed before October 22, 1994, the effective date of the act, these amendments have no application here. *Id.,* § 702(b)(1), 108 Stat. at 4150.

control over any of the assets of KLHI, including the KLHI broadcast license. Injunction, at 4, 5.

We conclude that paragraphs 8(b) and 8(h) of the injunction are consistent with the Bankruptcy Court's authority, without interfering with the FCC's exclusive jurisdiction. The injunction does not prohibit or restrict the Appellants from appearing before the FCC, or control any lawful representations the Appellants may choose to make. It merely prohibits the Appellants from practicing a fraud on the FCC at the expense of the Trustee, the creditors of the Debtor, and the Bankruptcy Court and from interfering with the rights of KLHI to the license.

█ We note that the Appellants' arguments are directed solely to the jurisdiction of the Bankruptcy Court to issue an injunction regulating their conduct before the FCC, not whether the factual predicates supported the issuance of the injunction. The record is replete with allegations of bad faith conduct by the Appellants, facts which are not disputed on appeal. The Appellants clearly indicated a willingness to make false and misleading representations regarding the April 11 judgment to the FCC. Indeed, the Appellants seem to contend it is a violation of their First Amendment rights to prohibit them from making false or misleading representations before the FCC. Appellants' Brief, at 27–28. The Appellants have no constitutional right to make such false or misleading statements. *See, e.g., Clipper Exxpress v. Rocky Mtn. Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1261 (9th Cir.1982) ("There is no first amendment protection for furnishing with predatory intent false information to an administrative or adjudicatory body.") (first amendment provides no protection to false statements to agency for the purpose of inhibiting competition in violation of the antitrust laws), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

The FCC accords respect to the April 11 judgment insofar as it does not intrude on the broadcast license issue. *E.g., Application of Parsons,* 10 F.C.C.R. 2718 ("The determination of whether a sale of assets amounts to an improper 'postpetition transfer' is squarely within the jurisdiction of the Bankruptcy Court."). Paragraph 8(h) does not forbid the Appellants from challenging the suitability of the Receiver or the Trustee to hold the broadcast license; it forbids them from asserting before the FCC any property interest in the broadcast license, an issue that has already been determined by the Bankruptcy Court. The apparent purpose for the misrepresentations was to practice a fraud upon the FCC by convincing it to take actions that conflicted with the April 11 judgment. Paragraphs 8(b) and 8(h) prohibit the Appellants from attempting to undercut the validity of the April 11 judgment in another forum, without interfering with the Appellants' right to make lawful representations before the FCC. We therefore affirm the injunction insofar as it relates to proceedings before the FCC.

C. The Bankruptcy Court's Injunction Was Proper As To The State Court Action.

█ The Appellants contend the injunction is improper as it relates to the state court action. They contend that neither Pacific Isle nor Martin are protected by the automatic stay, and that the Appellants should be allowed to obtain personal judgments against Pacific Isle and Martin.

Paragraphs 8(a) and 10 of the injunction are the only paragraphs that specifically address the state court action. Paragraph 8(a) provides that the Appellants are enjoined from:

> initiating, filing, maintaining, proceeding with, continuing or pursuing any judicial proceeding (except the appeals of the Orders of the Bankruptcy Court), including, without limitation, that certain action pending before the Circuit Court for the State of Hawaii, Second Circuit, captioned *Dale J. Parsons, Jr. v. Peter F. Martin, et al.,* bearing Civil No. 94–0667(2) ("State Court Action"), which pertains to and/or affects in any manner whatsoever, directly or indirectly, the Receiver, the Receivership, the Trustee, radio station KLHI or the assets thereof, including, without limitation, the KLHI broadcast license, absent further order of this Court.

Injunction, at 4. Paragraph 10 provides that "Dale Parsons, Jr. and all parties acting on

his behalf are stayed from prosecuting the State Court Action and/or any other action concerning the subject matter of the State Court Action, pending further order of this Court." Injunction, at 5.

We believe the Bankruptcy Judge intended those provisions specifically applicable to the state court action to be the only provisions of the injunction applicable to the state court action. Therefore, we need only examine the validity of paragraphs 8(a) and 10.

We find these paragraphs to be an appropriate exercise of the Bankruptcy Court's power. Dale Parsons requested a temporary restraining order from the State Court to prevent "Pacific Isle" from transferring the radio station or broadcast license pending the outcome of the state court action. This was nothing more than a blatant attempt by the Appellants to undercut the April 11 judgment. The bad faith behind the requested temporary restraining order is apparent in that the Appellants have repeatedly and forcefully contended, both here and before the Bankruptcy Court, that the FCC has exclusive jurisdiction over the broadcast license. Yet they deliberately attempted to obtain a state court order enjoining the disposition of that broadcast license, knowing that the State Court had no jurisdiction to do so, and knowing that the Bankruptcy Court had already determined the issue to the extent that any court other than the FCC may do so. In light of the Appellants' other actions, the Bankruptcy Judge properly concluded the State Court action was nothing more than a sham. Taking into account the fact the injunction was sought by emergency motion, and granted after a telephone conference, the Bankruptcy Judge appropriately balanced the hardships between the parties and enjoined the State Court action pending further order of the Bankruptcy Court.

The Appellants are not forbidden from prosecuting the State Court action. Rather, they must obtain permission from the Bankruptcy Court before continuing the action. In substance, this is merely a requirement that the Appellants demonstrate that the State Court action is not merely a sham for the purpose of interfering with the April 11 judgment. Under the circumstances, this is an entirely appropriate restriction. We affirm the injunction as to the restrictions on the state court action.

### CONCLUSION

The Appellants have engaged in "scorched earth" tactics throughout this litigation. The Bankruptcy Court appropriately enjoined them to enforce its judgments, and to prevent the Appellants from wasting estate assets. We AFFIRM.